## L. R., M. R. & T. Ry., v. Talbot & Co.

1. COMMON CARRIERS: *Exemption from liability for losses.*
   In the absence of a contract limiting his liability, a common carrier is liable for all losses except those caused by the act of God, by the public enemy, by the inherent defect, quality or vice of the thing carried, by their seizure under legal process, or by some act or omission of the owner of the goods. He may, however, contract for exemption for unavoidable accidents, but not for exemption from liability for losses occurring from his, or his servant's negligence, or for any other exemption not just and reasonable in the eyes of the law.

2. RAILROADS: *Common carriers; Exemption from liability for fire.*
   When a common carrier contracts for exemption from liability for injury from fire he is bound to exercise ordinary diligence to prevent such injury; that is, such care and diligence as a reasonable, prudent and honest man would exercise in respect to his own concerns under all the circumstances of the particular case; and if he uses this diligence he is not guilty of culpable negligence and not liable for the loss.

APPEAL from *Jefferson* Circuit Court.
Hon. W. M. HARRISON, Special Judge.

*J. M. Moore* for Appellant.

The law of this case was settled on the former appeal, *39 Ark., 527.*

This case is within the ruling of this court in *L. R., M. R. & T. Ry. v. Harper & Wilson, 44 Ark., 209.* The court there reversed the judgment against the appellant, on the ground that there was no evidence tending to prove negligence on its part.

L. R., M. R. & T. Ry. v. Talbot & Co.

The goods, for the value of which this suit was brought, were destroyed at the same time as were the goods involved in the case cited, and the evidence as to the origin of the fire is substantially the same in both cases. We therefore insist that the judgment should be reversed on that ground, even if the rulings of the court below of which we complain, and to which we will presently direct the attention of the court, shall be held not to have been erroneous.

Appellees contend that the carrier is held to extraordinary care and diligence. This is not the law.

Any deviation from the duty, or relaxation of the vigilance, imposed by the law on a bailee, whether slight or gross, is negligence.

It is in the foregoing sense that the language relied on by the appellees must be understood. By any negligence, the courts mean any failure to exercise that degree of diligence which the law imposes on the carrier, which is, as we will now proceed to show by the authorities, ordinary and reasonable diligence. See *60 Mo., 199; 20 Penn. St., 177; 10 Wall., 191; 6 How., 344; 14 Bush., 590; 46 N. Y., 278; Story on Bailment, 8 ed., secs. 570–1, and notes 8 and 3.*

*W. P. & A. B. Grace* for Appellees.

At common law a common carrier is liable as an insurer of the goods entrusted to his care, except as to acts of God and the public enemy. *Angell on Carriers, 67; 39 Ark. Rep., 157.*

In the United States it is well settled that while a common carrier may contract against liability for losses occurring from unavoidable accident, they are not permitted to contract for exemption from liability for losses occasioned by the negligence of themselves or their servants. *R. R. Co., v. Lockwood, 17 Wall., 357; Taylor & Co., v. R. R., 32 Ark., 398; N. J. Steam Nav. Co., v. Merchants Bank, 6 How., 344; Empire Trans. Co.,*

*v. Wamsutta Oil Co., 63 Pa. St., 14; Grace v. Adams, 100 Mass., 505; School Dist., v. B. H. & E. R. R., 102 Mass., 552; Christensen v. Am. Express Co., 15 Minn., 270.*

We have examined a large number of cases and have been unable to find a single case in which, under a similar contract, the defendant's liability has been held to depend upon the degree of negligence proved. In all the cases the rule is either conceded, or it is expressly decided, that common carriers must adopt every reasonable means, and use every reasonable precaution, to preserve the goods in their charge, and that any degree of negligence, however slight, will render them liable. To this effect see *Talbot v. L. R., M. R. & T. Ry., 39 Ark., 529; Steinway v. Eric R. R. Co., 43 N. Y., and authorities cited; Grey's Ex'r., v. Mobile Trade Co., 55 Ala., 387; M. S. & M. J. R. R., v. Heaton, 37 Ind.. 448; 20 Minn., 125; 24 Minn., 506; 3 Colo., 280; 115 Mass., 304.*

Many other authorities on this point are cited and reviewed in the case of *N. O., St. L. & C. R. R. Co., v. Faler & Co., 58 Miss., 911,* a case to which we respectfully ask particular attention. In that case the court said: "Whenever a loss of goods being transported by a railroad company results from a cause against which the company has, by special contract, stipulated for immunity, the company is still liable, notwithstanding the special contract, unless it can be acquitted of all blame for the loss."

In *Graham v. Davis, 4 Ohio St., 362,* it was held that negligence, whether gross or slight, could not be the subject of contract.

In *Michigan Southern Railroad v. Heaton, supra,* the court said: "That a carrier could no more contract for a slight degree of negligence than for gross negligence."

In *Steinway v. Erie Railway Co., supra,* the court holds the carrier liable if there was any negligence on his part "without regard to any supposed distinctions or degrees of negligence."

And, as conclusive on this point, see *Hutch. on Carriers*, *sec. 260, and cases cited.*

In the case at bar, the question as to the fact of negligence was properly submitted to the jury; they found against appellant, and the judgment should be affirmed.

BATTLE, J. This is the second appeal taken to this court in this action. The substance of the complaint and answer is stated in the opinion of this court delivered when it was here before, as appears in *39 Ark., 526.* By reference to that opinion it will be seen that it is an action for the value of goods received by the Little Rock, Mississippi River and Texas Railway Company, at Arkansas City, under three bills of lading, for transportation to plaintiffs, John H. Talbot & Co., at Pine Bluff; that two of these bills of lading contain clauses which exempt defendant from liability for loss of the goods by fire; that the other, which only covered tobacco, did not; that the goods were destroyed by fire; that this court held it was necessary for plaintiffs to prove that the loss resulted from the negligence of defendant or its agents, before they could recover anything on account of the goods described in the bills of lading containing the clauses exempting defendant from liability for losses by fire; and that this cause was remanded for new trial.

After the cause was remanded the defendant paid to plaintiffs the value of the tobacco covered by one of the bills of lading. The only question now in the case is, was the loss of the other goods destroyed by fire the result of the culpable negligence of the defendant or its agents.

The facts proven in the second trial are these: On the 20th of June, 1880, about 7 a.m., the wharf-boat in which the goods were, and which was used as defendant's warehouse or depot, was discovered to be on fire, and the same with its contents, including the goods sued for, were destroyed. The

wharf-boat was fully manned, with mate and watchmen, both night and day. At the time of the fire the clerk and mate were absent, eating their breakfasts, but the day watchman was on duty. Just before discovering the fire he went all over the lower deck of the wharf-boat; went to the forward part and made an examination, and returned to the rear; stepped on the stage plank leading to the shore, stopped and looked forward; saw the fire near the staircase in front, and immediately went forward and gave the alarm. There was a lamp-room under the stair-steps in front, which was used to fill and trim lamps on the wharf-boat. He did not examine this room, because it was in charge of the night watchman and he supposed it was locked. From under these stair-steps, where the lamp-room was, witnesses saw dense smoke coming soon after the commencement of the fire. The wharf-boat was so dry and the fire so rapid that only a small portion of freight and a portion of defendant's books were saved. An investigation was immediately made, but the origin of the fire could not be ascertained. There was no boat at the wharf-boat at the time, and had been none since 12 o'clock of the night previous. There was no water on the wharf-boat except ten or twelve buckets on the hurricane roof. The wharf-boat cost the defendant $6500 at Memphis, and $7500 to tow it down, and was insured for $6000. The defendant had been recently offered $10,000 for it. The value of the goods sued for, exclusive of the tobacco paid for, was admitted to be $425.

Plaintiff asked the following instructions, which the court gave, against defendant's objection, to the giving of each of which the defendant at the time excepted:

" 1. The plaintiffs are entitled to recover the value of the goods, with six per cent. per annum interest thereon from the 20th of June, 1880, if the jury find from the evidence that they were destroyed by fire by reason of the negligence of the defendant or its agents.

"2.    It is against public policy to permit common carriers to contract for exemption from liability for loss and damages happening from the negligence of themselves or their servants, and if the jury believe from the evidence that the loss of the goods in this case was occasioned by the negligence of the defendant or its servants, then the plaintiff is entitled to recover notwithstanding the exemption contained in the bills of lading."

Defendant asked the following instructions, which the court gave :

"1.    Under the bills of lading in this case it devolves on the plaintiff, Talbot, to prove that the goods were burned through the negligence of defendant's employes.

"5.    The plaintiff has the burden of proof in showing that the burning occurred through negligence, and the mere burning is not sufficient proof of negligence."

The defendant asked the following instructions, which the court refused to give, and to which refusal to give each of said instructions the defendant at the time excepted :

"2.    The defendant's employes were required to exercise ordinary diligence, but not extraordinary diligence, to keep the fire from breaking out and burning the goods.

"3.    The ordinary diligence which they were required to use was that diligence which a person of ordinary care and prudence exercises in preserving his own property.

"4.    Absence of employes from the boat would not necessarily be negligence, unless the burning would not likely have occurred, or they might reasonably expect this to give rise to the burning.

"6.    If the jury are left in ignorance by the testimony, as to how the fire occurred, or what caused it, they must find for the defendant.

"7.    Though the jury believe that the fire occurred in or near the lamp-room, this is not sufficient proof of negligence.

L. R., M. R. & T. Ry. v. Talbot & Co.

"8.   There is not sufficient evidence of negligence in this case, and the jury should find for the defendant.

"9.   The railroad employes were only required to exercise ordinary diligence in preventing the goods from burning."

A verdict was returned and judgment was rendered in favor of plaintiffs against defendant for $539.37.

Defendants filed a motion for a new trial, which was overruled, saved exceptions, and appealed.

The facts in this case are substantially the same as those in *L. R., M. R. & T. Ry Co. v. Harper & Wilson, 44 Ark., 208.* In that case, Mr. Justice SMITH, in delivering the opinion of this court said, as we say in this case: "The carrier having contracted for exemption from responsibility for losses occurring by fire, the plaintiff could not recover without affirmative proof that the fire was the result of negligence. The testimony has no tendency to prove the issue, and this is not a case where it can be said, *res ipsa loquitur.* For fires, of whose cause no intelligent explanation can be given, are not of such unusual occurrence that the jury might infer negligence in the defendant's servants from the mere happening of the accident."

But inasmuch as this cause will have to be remanded for a new trial, it is necessary to notice the question of law raised by the instructions given and excepted to and those asked and refused.

In the absence of a contract limiting the liability of a common carrier, he is liable for all losses except those caused by the act of God, by the public enemy, by the inherent defect, quality or vice of the thing carried, by the seizure of goods or chattels in his hands under legal process, or by some act or omission of the owner of the goods. He may, however, contract for exemption from liability for injuries occurring from unavoidable accidents, but not for exemption from liability for losses occurring from the negligence of himself or his serv-

1. COMMON CARRIERS: Exemption from liability for losses.

ants, or any other exemption not just and reasonable in the eye of the law.

**2. RAILROAD: Exemption from losses by fire.**  The question here is, having contracted for exemption from liability for losses by fire, to what extent was the defendant bound to be diligent in protecting, preserving and saving from loss and injury by fire the goods entrusted to its care for shipment?

*Wyld v. Pickford et al., 8 Mees. & Wels., 442,* was an action against common carriers for the value of goods delivered to them for the purpose of carriage. At the time of the delivery of the goods, the carriers, the defendants, gave notice to plaintiff, the shipper, that they would not be responsible for the loss of or damage done to the goods, unless the same were insured according to their value and paid for at the time of their delivery. The goods were not insured, at the time of the delivery, according to their value, or paid for, and were lost. Mr. Baron Park, after saying that the effect of the notice, according to the English rule, was that the carrier would not, unless they had been paid a premium, be responsible for all events (other than the act of God and the queen's enemies), by which loss or damage to the owner might have arisen, against which events, by common law, a carrier is a sort of insurer, said: "But still, he undertakes to carry from one place to another, and for some reward in respect of the carriage, and is therefore bound to use ordinary care in the custody of the goods, and their conveyance to and delivery at their place of destination, and in providing proper vehicles for their carriage."

In *Nugent v. Smith, 17 Moak's Eng. Rep., 343,* which was the case of a ship at sea caught in a storm, and the question being as to the degree of care which was required of the carrier in respect to the goods in his charge to protect him from a loss arising from the act of God, it was said by Cockburn, C. J., that "if he uses all the known means to which prudent and experienced carriers ordinarily have recourse, he does all that

can be reasonably required of him, and if, under such circumstances, he is overpowered by the storm or other natural agency, he is within the rule which gives immunity from such *vis major* as the act of God."

In *Railroad Company v. Reeves, 10 Wall., 190*, Mr. Justice Miller, in delivering the opinion of the court said: "The second instruction given by the court says that if while the cars were so standing at Chattanooga they were submerged by a freshet which no human care, skill and prudence could have avoided, then the defendant would not be liable; but if the cars were brought within the influence of the freshet by the act of defendant, and if the defendant or his agent had not so acted the loss would not have occurred, then it was not the act of God, and defendant would be liable." The fifth instruction given also tells the jury that if the damage could have been prevented by any means within the power of defendant or his agents, and such means were not resorted to, then the jury must find for plaintiff.

In contrast with the stringent ruling here stated, and as expressive of our view of the law on this point, we .cite two decisions by courts of the first respectability in this country.

In *Morrison v. Davis & Co., 20 Penn. St., 171*, goods being transported on a canal were injured by the wrecking of the boat, caused by the extraordinary flood. It was shown that a lame horse used by defendant delayed the boat, which would otherwise have passed the place where the accident occurred in time to avoid the injury. The court held that the proximate cause of the disaster was the flood, and the delay caused by the lame horse the remote cause, and that the maxim, *causa proxima, non remota spectatur*, applied as well to contracts of common carriers as to others. The court further held that "when carriers discover themselves in peril by inevitable accident, the law requires of them ordinary care, skill and foresight, which it defines to be the common prudence which men of

business and heads of families usually exhibit in matters that are interesting to them. . . . Of the soundness of this principle we are entirely convinced, and it is at variance with the general groundwork of the court's charge in this case."

In *L. & N. R. R. Co. v. Brownlee, 14 Bush., 590*, the appellant received tobacco for shipment under a contract inserted in the bill of lading that the company "shall not be liable for loss or damage by fire or other casualty while in transit or while in depot or landings at point of delivery." The tobacco was burned while in the depot of appellant awaiting shipment. The court said: "We think the appellant was only bound to use ordinary care and prudence in providing a depository for appellee's tobacco, and also such care and prudence in shipping it. . . . If appellant could, by the use of ordinary diligence, and in the regular course of its freight business, have shipped the tobacco before its consumption by the fire, it is responsible for its failure to do so, or if it failed to use ordinary precaution and vigilance in storing appellee's freight, or in avoiding the fire which consumed it, it is responsible for the consequences."

In *Story on Bailments, 544*, after quoting the conflicting authorities, it is said: "The question may, however, be now considered at rest by an adjudication entirely satisfactory in its reasoning and turning upon the very point, in which it was held that in notices (special contracts) the carrier is liable for losses and injuries occasioned not only by gross negligence, but by ordinary negligence. In other words, the carrier is bound to use ordinary diligence."

As in cases where the law exempts the common carrier from liability for losses caused by the acts of God or the public enemy, so in cases where he is exempt by contract from liability for losses arising from fire and like causes, he is bound to use ordinary diligence in protecting goods entrusted to his care for shipment, and saving them from loss and injury, which may be

L. R., M. R. & T. Ry. v. Talbot & Co.

defined to be that care or degree of diligence which a reasonable, prudent and honest man would take, exercise and exhibit in respect to his own concerns, under all the circumstances surrounding each particular case. If, in such cases, he uses this diligence he is not guilty of culpable negligence and not liable for losses.

Reversed and remanded for new trial.