RAILWAY COMPANY *v.* NEEL.

Opinion delivered June 4, 1892.

| 56 | 279 |
| f79 | 356 |
| d81 | 387 |

| 56 | 279 |
| 83 | 567 |

1. *Contract construed—Proximate cause of injury.*

The defendant, a railway company, entered into an agreement with a narrow gauge railway company to furnish to the latter facilities for running its engines and cars over defendant's track between Rob Roy and Pine Bluff, stations on defendant's line; plaintiff shipped cotton over the narrow gauge road consigned to himself at Pine Bluff, and took bills of lading therefor; in consequence of defendant's failure to comply with its contract, the narrow gauge railway company was unable to carry the cotton to Pine Bluff, and was compelled to throw it off at Rob Roy, where it was exposed to the rain and mud, and thereby loss was incurred for which plaintiff seeks damages. *Held*—

(a) That the contract between the two railway companies did not constitute a partnership nor make the narrow gauge railway company the agent of defendant for receiving freight.

(*b*) That if it be conceded that the plaintiff might recover for a violation of a contract to which he was not a party, he cannot recover in this case because the proximate cause of the injury complained of was, not the violation by defendant of its contract with the narrow gauge railway company, but the exposure of the cotton to the rain and mud.

2. *Carrier—Liability for property accepted.*

A common carrier becomes responsible for the care and custody of property from the time such property is accepted for transportation.

3. *Effect of carrier's refusal to accept property.*

Where a carrier wrongfully refuses to accept property tendered for transportation, the shipper cannot abandon the property, or leave it exposed to the ravages of the weather, at the carrier's expsnse ; it would still be his duty to preserve it, and it would be his right to recover of the carrier the reasonable expense therefor, together with the proximate damages for the delay.

4. *Bill of lading—Conclusiveness as receipt.*

A recital in a bill of lading that the goods were received "in apparent good order" refers only to the external condition of the goods, and as between the original parties is only *prima facie* proof of the true condition of the goods when received.

5. *Carrier—Liability for damages.*

A carrier is liable for damages accruing to goods received for shipment from the time they are received, and not from the date of the bill of lading only ; and if the evidence warrants a difference of opinion about the fact, it is for the jury to determine whether the goods were actually received before the bill of lading issued.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

Suit by C. M. Neel against the St. Louis, Arkansas & Texas Railway Co.

The complaint alleges two causes of action, viz:

(1)   That plaintiff built a railroad from Rob Roy, a station on defendant's line of railway, distant seven miles from Pine Bluff, to Swan Lake, in Jefferson county, for the purpose of transporting freight and passengers to and from Pine Bluff.   That the railway so built was

incorporated as the Pine Bluff & Swan Lake Railway Co., and during the year 1886 was run and operated under said name, the plaintiff being president and chief stockholder. That, on the 7th day of July, 1886, the Pine Bluff & Swan Lake Railway Co. entered into a contract with defendant whereby it was agreed that the former should run its own trains over the latter's track from Rob Roy to Pine Bluff. That, at this time, defendant and the Pine Bluff & Swan Lake Railway Company were both narrow gauge roads, and as defendant contemplated widening its gauge, it was agreed that when the change was made, it should maintain a third rail on its track between Rob Roy and Pine Bluff, so as to allow the passage of trains of the Pine Bluff & Swan Lake Railway between Pine Bluff and Rob Roy. That the contract was to be and remain in full force until July 7, 1887, and that, by said contract, the Pine Bluff & Swan Lake Railway Company and defendant become partners in the transportation of passengers and freight from Swan Lake to Pine Bluff, and operated their respective lines of railway jointly and divided their receipts for freight and passengers from the date of the execution of the said contract until October 18, 1886, when defendant tore up its rails and widened its gauge, but neglected to put in the third rail, as stipulated in the contract, and thereby prevented the transportation of freight and passengers to Pine Bluff along the line of said Pine Bluff & Swan Lake Railway until December 22, 1886. Plaintiff further states that he, at divers times between the 18th day of October and the 17th day of November, 1886, delivered his own cotton, amounting to 143 bales, to the Pine Bluff & Swan Lake Railway Company for shipment to himself at Pine Bluff, and took bills of lading therefor ; that, in order to pay for money and supplies advanced by him,

divers persons delivered 320 bales of cotton to the said Pine Bluff & Swan Lake Railway Company consigned to plaintiff at Pine Bluff, and took bills of lading therefor ; that plaintiff delivered to the said Pine Bluff & Swan Lake Railway Company for shipment to himself at Pine Bluff about 200 tons of cotton seed and took bills of lading therefor. But that, by reason of defendant company violating its said contract and refusing to allow the trains of the Pine Bluff & Swan Lake Railway Company to pass over its road, said cotton was carried to Rob Roy and there thrown off and exposed to the rain and mud, and was damaged in the sum of $10 per bale, and the cotton seed of the value of $8 per ton was entirely lost. Whereby plaintiff was damaged in the sum of $6,230.

(2) As a second cause of action, plaintiff alleges that, some time between October 18 and November 17, 1886, plaintiff delivered to defendant at Rob Roy station 623 bales of cotton and 300 tons of cotton seed, worth $8 per ton, consigned to plaintiff at Pine Bluff, and took bills of lading therefor ; that defendant let said cotton and cotton seed lie in the mud and exposed to the rain at Rob Roy until said cotton was damaged $10 per bale and the cotton seed entirely lost, and plaintiff thereby was damaged in the sum of $8,630.

The following is the agreement referred to in the complaint :

"Memorandum of agreement, entered into this 7th day of July, 1886, between the St. Louis, Arkansas & Texas Railway and the Pine Bluff & Swan Lake Railway, for the interchange of traffic and the mutual protection of each other's interest.

" (1) Both parties agree to maintain the following rates between Rob Roy and Pine Bluff, subject to the St. Louis, Arkansas & Texas classification :

| 1st. | 2d. | 3d. | 4th. | 5th. | 6th. | | | A. | B. | C. |
|------|-----|-----|------|------|------|---|---|------|------|------|
| 17c. | 15c. | 12c. | 10c. | 9c. | 8c. | | | $16.00. | $14.00. | $11.00. |

"Passenger rates, 25 cents per whole ticket and 15 cents per half ticket; and each passenger without a ticket shall be charged 30 cents for full fare and 25 cents for half fare.

"(2) The above rates shall be the minimum figures to be charged at any station on the Pine Bluff & Swan Lake Railway to or from Pine Bluff.

"(3) The Pine Bluff & Swan Lake Railway agrees to pay the St. Louis, Arkansas & Texas Railway the following rates on all business handled by the Pine Bluff & Swan Lake train between Rob Roy and Pine Bluff:

| 1st. | 2d. | 3d. | 4th. | 5th. |
|------|-----|-----|------|------|
| 7c. | 7c. | 5c. | 5c. | 5c. |

"Car loads, $2.50 per car; cotton, 20 cents per bale; 15 cents for each passenger carried.

"(4) The Pine Bluff & Swan Lake Railway agrees to accept, between Rob Roy and all stations on its line, 20 cents per hundred on less than car loads and $12 per car in car loads, and 75 cents per bale on cotton, and 50 cents for each full-fare ticket for any business from or to points on or reached by the St. Louis, Arkansas & Texas Railway.

"(5) Where any of the rates herein work a hardship on either party, the same may be changed or modified by mutual consent of the parties hereto upon ten days' notice in writing.

"(6) Agents of the St. Louis, Arkansas & Texas Railway at Pine Bluff and Rob Roy shall examine and check all freight and passengers carried between Rob Roy and Pine Bluff on the Pine Bluff & Swan Lake Railway trains.

"(7) All settlements to be made weekly by draft or in cash, and the books of the Pine Bluff & Swan Lake

Railway shall be open for inspection for agents of the St. Louis, Arkansas & Texas Railway at all times.

"(8) It is further agreed that the St. Louis, Arkansas & Texas Railway, after its change in gauge from present to standard gauge, shall maintain a third rail upon its track between Rob Roy and Pine Bluff to accommodate the passage of trains of the Pine Bluff & Swan Lake Railway between the points mentioned.

"(9) It is also further agreed that the Pine Bluff & Swan Lake Railway shall furnish its own terminal facilities at Pine Bluff, and shall be at the expense of handling all freight forwarded over or received by that company.

"(10) It is further agreed that the Pine Bluff & Swan Lake Railway shall run its own trains, hauled by engines owned by itself, between Pine Bluff and Rob Roy, over the track of the St. Louis, Arkansas & Texas Railway, subject to the rules and regulations governing the employees of the St. Louis, Arkansas & Texas Railway ; that the trains of the Pine Bluff & Swan Lake Railway shall at no time and under no circumstances enter upon the track of the St. Louis, Arkansas & Texas Railway without first having received permission or orders to do so from the division superintendent, master of transportation, train dispatcher, or some other authorized official of the latter company.

"(11) It is further agreed that the Pine Bluff & Swan Lake Railway Company train is to do no business at any station on the St. Louis, Arkansas & Texas Railway between Pine Bluff and Rob Roy.

"(12) A violation of this contract by the Pine Bluff & Swan Lake Railway will be sufficient to annul the same at the option of the St. Louis, Arkansas & Texas Railway, or *vice versa.*

"(13) This contract shall be in force and continue

until the 7th day of January, 1887, and may terminate thereafter by either party giving ninety days' notice.

"PINE BLUFF & SWAN LAKE RAILWAY,

"Per C. M. NEEL, President.

"ST. LOUIS, ARKANSAS & TEXAS RAILWAY CO.,

"Per S. W. FORDYCE, President."

The defendant's answer put in issue all the material allegations of the complaint. The jury, upon the evidence and under the court's instructions, found for the plaintiff and assessed his damages at $10 per bale for 623 bales of cotton with interest thereon, and also damages for loss of 300 tons of cotton seed at $8 per ton with interest. Defendant has appealed. So much of the evidence as is necessary to its proper understanding is stated in the opinion.

*J. M. & J. G. Taylor* and *Sam. H. West* for appellant.

1. It was error to admit evidence as to the contract between the appellant and the Swan Lake railroad. The contract did not constitute a partnership, nor make the Swan Lake railroad the agent of appellant to receive freight on its behalf. 139 U. S. 223; 104 U. S. 146; 42 Ark. 465; Bates on Part. sec. 66 and note.

2. The appellant was not responsible for damages to the cotton prior to its receipt, nor subsequent to its attachment. It was incumbent on plaintiff to prove that the damage was caused during the period the cotton was delayed. 43 Mich. 609.

3. But the delay was not the cause of the damage; the entire damage was caused by the acts, fault and negligence of the servants and agents of plaintiff. 63 Tex. 322.

4. Appellant not responsible until actual delivery to the railroad. Hutchinson, Car. secs. 760, 750.

*N. T. White, House & Cantrell, S. W. Williams* and *W. P. Grace* for appellee.

1.   By the contract of July 7th, both railroad companies were bound jointly and severally to carry freight and passengers as common carriers from Rob Roy to Pine Bluff.   Hutch. on Car. sec. 158; *ib.* 159–160; 11 Wend. 571; 78 N. C. 294; 7 Rich. (S. C.) Law, 202; 14 Pick. 289; 7 Hill (N. Y.), 292; 3 Duvall (Ky.), 4; 112 *id.* 180; 48 N. H. 339.

2.   If the railroad received the cotton and seed for transportation, and they were damaged thereafter while in its possession, it is certainly liable.   Hutchinson on Car. secs. 64–89.   The evidence is ample on this point.

3.   Delivery to the company made it liable without a bill of lading.   Hutch. on Car. 729–730.

4.   The damages are not excessive.

5.   Where the verdict and judgment are right upon the whole record, the judgment will be affirmed, though the court erred upon some questions of law, or admitted some irrelevant testimony.   54 Ark. 415; 7 *id.* 543.

COCKRILL, C. J.   The appellee argues that the proof establishes two uncontroverted grounds for recovery of compensation from the railway for damages to his cotton and cotton seed.

1st.   Because of the appellant's violation of the contract entered into between it and the Swan Lake railway.

2d.   Because the appellant received the cotton and cotton seed for transportation and thereafter negligently allowed it to be damaged by exposure to the rain and mud.

The first position is untenable, and all the evidence in relation to it should have been excluded from the jury.

The second position is sound if true in fact, but the fact is that the jury awarded damages in the highest amount that the cotton and cotton seed can be said to have sustained, while the uncontroverted proof is that a part of the damage was incurred after the property had

been taken from the company's possession under writs of attachment against the appellee—the company's responsibility having then ceased. Moreover, the consideration of evidence pertinent to the second branch of the cause was withheld from the jury by the court's charge.

1. The contract between the two railway companies did not constitute a partnership between them, nor did it make the Swan Lake railroad the agent of the appellant company for the purpose of receiving freight for and on its behalf. All the cases cited by the appellee on this branch of the case relate to one or the other of those positions, and are therefore inapplicable.

<span style="float:right">1. Construction of contract.</span>

The contract plainly intended to confer a license upon the Swan Lake railway to run its trains over the appellant company's track between Rob Roy and Pine Bluff. It created no other right, unless it was to limit the appellant's rights to make certain charges for freight and passengers. If the appellant violated its contract, the Swan Lake Railway could recover all damages legally traceable to the unwarranted breach. But if that company had been the owner of the cotton and cotton seed in question, and were substituted for Neel as plaintiff in this cause, the violation of the contract would not warrant the recovery of damage occasioned by the exposure of the cotton to the mud and rain, because the violation of the contract was not the proximate cause of that injury. The actionable injury was the deterioration in the quality of the cotton. The proximate cause of the deterioration was the exposure to the rain and mud, and not the violation of the contract by tearing up a rail. If the cotton had been properly cared for, the delay would not have caused any deterioration in quality, and the market price is shown to have advanced pending the delay. The only injury in proof came from the failure to properly care for the property. But "in actions of this description the injury complained of must

<span style="float:right">What is the proximate cause of an injury.</span>

be shown to be the direct consequence of the defendant's negligence. This is the only practical rule which can be adopted by courts in the administration of justice. It is not enough that the act charged may constitute one of a series of antecedent events without which, as the result proves, the damage would not have happened." *Hoadley* v. *Transportation Co.*, 115 Mass. 304.

The rule is illustrated by a variety of cases, and is sustained by an unquestioned line of authority. *Little Rock Railway Co.* v. *Talbot*, 47 Ark. 97 ; *Martin* v. *Railway Co.* 55 *ib.* 510 ; *St. Louis, etc., Railway* v. *Commercial Insurance Co.* 139 U. S. 223 ; *Dubuque Wood Co.* v. *Dubuque*, 30 Iowa, 176.

If the Swan Lake Company in the case supposed could not recover, of course Neel, the appellee, could not ; for a derivative right through that company, which is a party to the contract, is the most that could be claimed for him, if it be conceded that he can derive any right through the contract. See 1 Shearman & Redf. Neg. sec. 118 ; 2 Whart. Cont. sec. 786.

2. Liability of carrier for property accepted.

2. The contract imposed no obligation upon the appellant to receive or care for the cotton, etc., and the duty to do so—the violation of which the second position assumes—must be sought under its general obligation as a common carrier.

No bill of lading was issued by the appellant company for any of the 300 tons of cotton seed, or for forty odd bales of cotton. At what time the company accepted this property for transportation, if ever, is not certain from the evidence. But it did not become responsible for the custody or care of it until it was accepted. Hutchinson, Carriers, secs. 82, 94–5.

3. Effect of carrier's refusal to accept property.

If the company wrongfully refused to accept it when tendered, that would not justify the shipper in abandoning the property or in leaving it exposed to the ravages of the weather at the carrier's expense. It would still

be the shipper's duty to preserve the property, and it would be his right to recover the reasonable expense therefor of the carrier, together with the proximate damages for the delay. But the damage resulting from his own want of care in failing to provide proper protection for his property is not the result of the delay or of the carrier's violation of its public obligation to receive and transport. He cannot visit that loss therefore upon the company. *Houston, etc., Railway* v. *Smith*, 63 Texas, 322.

The appellant requested the court to charge the jury substantially to that effect, but the court refused to do so. That was error.

The residue of the cotton was carried to Rob Roy by the Swan Lake Railway, and was allowed to remain where it was unloaded by its employees until it was attached by Neel's creditors. The testimony of one of the employees of the Swan Lake Company tends to prove that it was received by the agent of the appellant company at Rob Roy for shipment as rapidly as it arrived there. But the testimony of Neel, the appellee, tends to prove that it was held by the Swan Lake Railway in the expectation that that company would be able to transport it to Pine Bluff on its own trains, and that from time to time thereafter bills of lading were issued for it by the appellant. The court refused to charge the jury that if they believed that phase of Neel's testimony to be the true state of the case, there could be no recovery against the appellant for any damages which accrued prior to the issuance of the bills of lading. It is manifest that the court ought so to have charged the jury unless the clause in the bills of lading which recites that the cotton for which they were issued was received " in apparent good order " precludes the carrier from showing that the cotton was damaged before it was received by it.

4. Conclusiveness of bill of lading as a receipt.

There is some obscurity and probably conflict in the statement of the law upon this subject by the adjudged cases and the text writers. The authorities all agree that neither the clause "in good order" nor "in apparent good order" precludes the carrier from showing that the goods were damaged when received, if the injury was invisible or latent. But some of them intimate, if they do not state, that proof of a visible or patent injury is inadmissible in the face of such a clause. The true rule, as it appears to us, is that the clause "in apparent good order" refers only to the external condition of the goods, and as between the original parties is only *prima facie* proof of the true condition of the goods when received, like any other recital or statement of fact in a receipt not amounting to a contract. Porter, Bills of Lading, sec. 43; Hutchinson, Carriers, secs. 122, 125. The question is ably discussed, and the reasons for the rule clearly stated, in the case of *Witzler* v. *Collins*, 70 Me. 290.

5. When liability of carrier accrues.

In charging the jury upon this subject, however, it should be made plain that the carrier is liable for damages accruing to goods received for shipment from the time they are received and not from the date of the bill of lading only. If the evidence warrants a difference of opinion about the fact, it is for the jury to determine whether the goods were actually received before the bill of lading issued.

Other points are pressed upon our consideration by the appellant, but those determined are the cardinal questions in the cause, and when the errors as to them are pointed out, the court is not apt to go wrong upon a new trial.

For the errors indicated, the judgment is reversed, and the cause will be remanded for a new trial.

It is so ordered.