ARKANSAS SOUTHERN RAILROAD COMPANY *v.* MURPHY.

Opinion delivered June 24, 1907.

CARRIER—DESTRUCTION OF FREIGHT BY FIRE—NEGLIGENCE.—Although the bill of lading under which a railroad company assumed to ship a car of lumber exempted the carrier from liability for loss by fire unless such loss resulted "directly and exclusively" from its negligence, or from that of its employees, evidence that the car was permitted to remain

on a side track near a sawmill for two days and that it caught fire therefrom was sufficient to sustain a finding that the railroad company was guilty of negligence.

Appeal from Union Circuit Court; *Charles W. Smith,* Judge; affirmed.

### STATEMENT BY THE COURT.

Guy Murphy, as receiver of the El Dorado Lumber & Planing Mill Company, brought an action against the Arkansas Southern Railroad Company to recover the value of two cars of yellow pine lumber which had been delivered to the defendant at Junction City, Arkansas, for transportation to St. Louis, Missouri, and Waldron, Michigan, and had been destroyed by fire.

The defendant denied liability on the ground that said lumber was shipped under contracts, or bills of lading, conditioned that "neither this company nor any of its connecting carriers shall be liable for any damage to or destruction of said property by fire, unless such damage or destruction shall result directly and exclusively from their negligence or that of their employees, and unless such negligence shall be affirmatively established by the owner of said property."

Plaintiff filed an amended complaint alleging that defendant negligently permitted said cars to remain on the sidetrack to the mill of the El Dorado Lumber & Planing Mill Company, at Junction City, Arkansas, until they were destroyed by fire, and that said damage or destruction resulted directly and exclusively from the negligence of defendant.

Defendant filed an answer, denying the allegation of the amended complaint.

The case, by agreement, was tried by the court upon the following agreed statement of facts:

"It is agreed by and between the plaintiff and defendant in this cause that facts hereinafter set out are true:

"That on the 9th day of May, 1904, the El Dorado Lumber & Planing Mill Company was a corporation organized and doing business under the laws of the State of Arkansas, and having its principal place of business in Union County.

"That on said date the Arkansas Southern Railroad Company was and still is a corporation organized and doing business as a common carrier under the laws of the State of Arkansas, and that its line of railway commences at El Dorado, Arkansas, and extends into Louisiana.

"That on the 4th of June, the plaintiff herein was appointed by the chancery court of Union County as receiver of the El Dorado Lumber & Planing Mill Company, and that the plaintiff on said day duly qualified as such receiver.

"That on the 9th day of May, 1904, the said defendant received from the said El Dorado Lumber & Planing Mill Company, at Junction City, Arkansas, a station on its road, two car loads of yellow pine lumber, as follows:

"Car 7101, Mo. P., of the value of $210.48, and car 15835, N. O. & N. E., of the value of $247.95, and undertook to deliver them to H. W. Clark at St. Louis, Missouri, and A. Baduska & Son, at Waldron, Michigan, respectively.

"That the terminus of the defendant company's railroad is El Dorado, Arkansas, and the said bill of lading was a through bill over several different connecting railroads owned by separate and independent railroad companies.

"The copy of said bills of lading are hereto attached.

"That on the morning of May 11, 1904, said cars were totally destroyed by fire, which fire originated in the saw mill plant of El Dorado Lumber & Planing Mill Company and spread to the cars on side-track.

"That the said cars of lumber had been under the control of the defendant from the morning of May 9 until they were burned. . That trains passed Junction, Arkansas, each way on both May 9, after defendant had possession and control of said cars, and on May 10."

It was stipulated in the bills of lading, made a part of the agreed statement of facts, as follows: "Neither this company, nor any of its connecting carriers, shall be liable for any damages to, or destruction of, said property by fire, unless such damages or destruction shall result directly and exclusively from their negligence or that of their employees, and unless such negligence shall be affirmatively established by the owner of said property."

The court found the facts as follows: "The court finds that under the agreed statement of facts in this case the defendant was guilty of negligence in leaving the two cars of lumber sued for on the side track for the length of time as shown by the agreed statement of facts, and that this negligence was the proximate cause of the loss."

And the court made the following declaration of law: "The court declares the law to be that the defendant is liable to the plaintiff for the value of the lumber destroyed, as shown by the agreed statement of facts."

Judgment was rendered in favor of the plaintiff for the amount sued for, and the defendant appealed.

*Buzbee & Hicks*, for appellant.

The delay in shipment was not the proximate cause of the loss, and appellant is not liable. 69 Ark. 402; 139 U. S. 223; 55 Ark. 510; 56 *Id.* 279; 58 Id. 157.

*R. L. Floyd*, for appellee.

The company's negligence in failing to remove the cars was the proximate cause of the loss. 13 L. R. A. 518 etc.

A carrier can not limit its liability for loss caused by its negligence. 47 Ark. 106; 6 Cyc. 388; 5 A. & E. Enc. Law (2 Ed.), 308. The liability of a carrier upon delivery for loss by fire is established in 60 Ark. 338 and 75 *Id.* 103.

BATTLE, J., (after stating the facts.) "In the absence of a contract limiting the liability of a common carrier, he is liable for all losses except those caused by the act of God, by the public enemy, by the inherent defects, quality or vice of the thing carried, by the seizure of goods or chattels in his hands under legal process, or by some act or omission of the owner of the goods. He may, however, contract for exemption from liability for injuries occurring from unavoidable accidents, but not for exemption from liability for losses occurring from the negligence of himself or his servants, or any exemption not just and reasonable in the eye of the law." *Little Rock, M. R. & T. Ry.* v. *Talbot,* 47 Ark. 103.

The liability of a carrier for losses caused by unavoidable accidents, from which he is exempt by stipulation, is the same

as his liability for losses occasioned by the act of God. "It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the act of God, or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage." 1 Shearman & Redfield on Negligence (5 Ed.), § 39 and cases cited. In *Wolf* v. *American Express Company*, 43 Mo. 421, it is said: "The act of God which excuses the carrier must not only be the proximate cause of the loss, but the better opinion is that it must be the sole cause. And where the loss is caused by the act of God, if the negligence of the carrier mingles with it as an active and co-operative cause, he is still responsible." Many authorities hold that where the unnecessary delay of a carrier in the transportation subjects goods in his possession to a loss by an act of God, which they would not otherwise have sustained, the delay is such negligence as will make him liable for the loss. *Wald* v. *Pittsburg, C. C. & St. L. R. Co.*, 162 Ill. 545, and 35 L. R. A. 356, and cases cited; 1 Hutchinson on Carriers (3 Ed.), § § 301-305. It is the duty of a carrier to care for and protect property in his care against loss and injury. He can not fold his arms, "and, because it is subjected to causes that may work its destruction for which he is not responsible, make no effort to save or protect it from such causes or agencies, and then claim to be exempted from liability."

There are cases which hold that a carrier is not liable where his unnecessary delay subjects goods in his care to a loss by an act of God. They do so upon the ground that the delay is not the proximate cause of the injury. 1 Hutchinson on Carriers, (3 Ed.), § § 297-300, and cases cited. But we think the other opinion is the better doctrine and more calculated to secure the enforcement of the duties of carriers and the protection of shippers; and for the reason upon which it is based is, as already stated, applicable and governs in cases like the case at bar.

The railroad company did not have the custody or control of the cotton in controversy in *St. Louis, I. M. & S. R. Co.* v. *Commercial Union Insurance Company*, 139 U. S. 223; *Martin* v. *Railway Company*, 55 Ark. 510, and *Railway Company* v.

*Neel,* 56 Ark. 279, cited by appellant, and was not responsible for its care and protection.

In *James* v. *James,* 58 Ark. 157, also cited by appellant, the plaintiff did "not seek recovery upon the ground that the bailee for hire did not use ordinary care in the preservation of the cotton, or that he negligently destroyed it." It was unlike the case at bar, and did not present the same question.

In this case appellant was exempted from losses by fire on condition that it exercised ordinary care and diligence in the protection of the lumber intrusted to its care and in its transportation; and it was its duty to do so. For two days the cars of lumber were allowed to remain on the side tracks near a mill, exposed to any fire that might originate there. For two days trains were passing and the cars were not removed. The necessity of protection to the cars of lumber against fire, on account of their proximity to the mill, could have been reasonably foreseen. The court, sitting as a jury, found that the appellant was guilty of negligence, and the evidence sustained the finding.

Judgment affirmed.