CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* MILES.

Opinion delivered December 13, 1909.

1. CARRIERS—CONNECTING LINES—LIABILITY OF INITIAL CARRIER.—In the case of an interstate shipment of cattle, the initial carrier, regardless of any contract, is liable, under the Hepburn Act, for all damage to

the cattle directly and proximately due to the negligent delay of itself or of its connecting carriers in transporting them. (Page 577.)

2. Same—notice of special damages.—Where a carrier had notice that cattle were being shipped with a view to an auction sale at the destination on a particular day, it is liable for the damage caused by the negligence of itself or its connecting carriers whereby the cattle fail to reach their destination by the agreed time. (Page 578.)

3. Same—delay in transportation—measure of damages.—The damages recoverable from a railroad company for negligently failing to transport cattle by a certain day whereby an opportunity of sale was lost is the difference between what they would have sold for on that day and what they would have brought in the same market after they reached their destination. (Page 578.)

4. Same—negligence—proximate cause.—Where the failure of a railway company to transport cattle within the time it had agreed to do so was due to negligent delay upon its part concurring with the act of God in washing away a bridge, and where the latter cause would not have occasioned delay but for the prior delay in transportation, the railway company is liable for the damage sustained by the delay. (Page 579.)

Appeal from Logan Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

### STATEMENT OF FACTS.

The appellee sued appellant for damages which he alleged resulted to him by reason of the negligent failure of appellant to deliver a carload of Hereford cattle at Brady, Texas, on or before April 18, 1908. Appellee alleged that, before entering into the contract with appellant to deliver the cattle at Brady, he notified appellant that it was necessary for the cattle to be a Brady on or before the 18th of April, 1908, in order that they might be sold at a public auction sale to take place on that day, and that appellant, with full knowledge of the purpose for which the shipment was being made, contracted with appellee to transport and deliver the cattle. The appellee alleged that the negligent failure of appellant to comply with its contract caused appellee to lose the high market arranged for, and provided by the auction sale, and that by reason thereof appellee was damaged in loss of value of the cattle amounting to $1,200.

The appellant denied the material allegations, and set up in defense that the cattle were shipped under a contract which provided that appellant should not be liable for any loss or

damage to the cattle that did not occur on appellant's line; that the cattle were not to be transported within any specified time, nor delivered at destination for any particular market, and that in case of loss appellant would be subjected only to a limited liability set forth in the contract.

The evidence on behalf of appellee tended to show that in the year 1907 he, with a number of breeders of Hereford cattle in Texas, decided to hold an auction sale at Brady, Texas, which is located in the Middle Plains country, and is distinctly a cattle country; that they advertised this sale extensively over four or five counties to take place on the 18th day of April, 1908; that he contributed to this sale ten (10) pure bred and registered bulls and two (2) heifers; that he put these animals up in the previous September, and fed and carefully cared for them all through the previous winter; that they were in fine condition, and weighed from 1,200 to 2,100 pounds; that when the time approached for the sale he wrote to the agent of the defendant, stating that he wished to ship his cattle from Booneville, Arkansas, to Brady, Texas, and ordered a car for them, and explained in detail the purpose and necessities of the shipment, and selected the route they should travel, and he and the agent, after a full discussion of all the details relative to this shipment, agreed that the cattle should leave Booneville on Monday, the 13th, and by so doing they would reach Brady by the following Friday; that he explained to Mr. Briggs, the agent of the defendant, that he was unwilling to ship his cattle on a limited liability contract, and that he did not sign or authorize anybody else to sign for him any such contract; that the contract he had with the railroad company was an oral contract entered into by himself with the company; that he entered into no written contract; that Mr. Briggs, the agent of the defendant, agreed to put these cattle in Brady, Texas, in time for the sale; that he would not have shipped them if this agreement had not been made; that the agent of the defendant told him the cattle would get to Brady Wednesday morning or Wednesday night before the sale on Saturday; that he shipped his cattle from Booneville by way of Holdenville, Oklahoma, and Fort Worth, Texas, to Brady, Texas; that the cattle failed entirely to reach Brady until more than a week after the sale;

that his cattle were worth in that market and at that sale an average of $200 apiece; that he had no market at his home in Arkansas for these cattle, and that, after said cattle failed to reach Brady in time for the sale, he managed to sell them at private treaty, and without the purchaser seeing them, at $100 apiece.

There was evidence tending to show that the cattle did not reach Brady on the day specified because of the negligent delays in shipment by appellant and connecting carriers; that but for such delay the cattle would have passed the place in route and have been delivered before the unprecedented floods came that washed away a bridge, which thereafter rendered it impossible to deliver the cattle at the place of destination in time for the auction sale.

The testimony on behalf of appellant tended to show that the cattle would have reached their destination on the Saturday morning of the day that the auction sale took place, but for the fact that a certain bridge was washed away by unprecedented floods, which delayed their transportation for several days. The testimony for appellant tended to show that the written contract was the one entered into with appellee covering the shipment.

The appellant introduced a written contract of shipment, signed by Briggs, appellant's station agent at Booneville, and by O. L. Miles. The evidence showed that the name of O. L. Miles was signed by J. T. Moore, who testified that he was to look after the shipment, that Miles sent him to deliver the cattle to the railway company and to look after them while they were being transported. He signed Mr. Miles's name to the contract and paid the freight charges, Miles having furnished him the money; that Miles never instructed him to sign a contract limiting the liability of the company for the loss of the cattle, etc.

The contract contained a provision that each carrier's liability under the contract ceased upon delivery by it to its connecting carrier and exempting the appellant as the initial carrier from loss occurring beyond its own line. It also contained a provision that cattle were not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market. There were provi-

sions limiting the liability in case of loss to an amount not exceeding the sum named. There were also provisions by which the owner waived any cause of action for damages under any prior verbal contract, and acknowledging that he had had the option between the contract at carrier's risk and the contract made.

The court gave instructions on its own 'motion, to which appellant duly excepted, and refused prayers for instructions presented by appellants, and to the court's ruling in this particular appellant excepted. The law of the case will be commented on in the opinion.

The jury returned a verdict for $1,036. The judgment was entered accordingly, and this appeal followed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

The damages in such cases are such as may be considered to arise naturally from the breach, or such as may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract. 9 Exch. 355. It was appellee's duty to make the damages as small as possible. Suth. Dam., § 90; 22 Mich. 117; 102 Mass. 132. The damages were caused by the act of God, and appellant is not liable. 115 Mass. 304; 10 Wall. 176; 20 Pa. St. 171; 76 Miss. 885; 101 Va. 778; 88 S. W. 117; 67 S. W. 129; 62 Mo. 527; 93 S. W. 851; 139 U. S. 237; 58 Ark. 157; 23 O. St. 523; 13 Am. R. 264.

*Robert J. White,* for appellee.

Where the negligence of the carrier concurs with the act of God in producing a loss, the carrier is not exempted from liability by showing that the last cause of damage was the act of God.

WOOD, J. (after stating the facts). 1. It is wholly immaterial, under the evidence in this case, whether the cattle were shipped under an oral or written contract. For in either case appellant would be liable for any damages to appellee caused through its negligence or the negligence of connecting carriers. If appellant or connecting carriers failed to exercise ordinary care in the transportation of the cattle, resulting in delays by reason of which the cattle failed to reach their destination in a reasonable time after they were delivered to appellant for shipment, then appellant would be liable to appellee in damages

for whatsoever injury the latter sustained as the direct and proximate result of such negligence. *St. Louis S. W. Ry. Co. v. Grayson,* 89 Ark. 154.

2. The court did not err in admitting the evidence of appellee as to the amount of his damages by reason of the failure of appellant to deliver the cattle at Brady on the 18th day of April, 1908.

Appellant had notice of the day of the sale, and of all the circumstances in detail as to why the sale was planned and fixed for that day. The sale was for a special purpose, and was extensively advertised for that day. Appellant, according to the evidence of appellee, had notice of all this, and made its contract with full knowledge that it was necessary to get the cattle to Brady for the sale on that day if appellee was to secure the benefit of that sale. Appellant had no right to assume that the sale would continue from day to day, or would be as profitable to appellee if made on some other day. No other day was thought of. That was the particular and only day. Having notice of the special damage that would result to appellee if he failed to get his cattle to that auction sale, and having contracted with appellee after such notice to deliver them for that sale, appellant can not be heard to say that the damages that appellee sustained by reason of the loss of that particular sale were not in contemplation of the parties to the contract. *Hadley v. Baxendale,* 9 Exch. 341. See *Western Union Tel. Co. v. Hogue,* 79 Ark. 33; *Western Union Tel. Co. v. Raines,* 78 Ark. 545.

The damages in such case is the difference in the value of the cattle as measured by what they would have sold for on the market at the auction sale, had the same occurred, and what they would have brought on the market at the same place and on the same day when not sold at auction. The proof is positive that the sale of the cattle that were on hand for the auction did not exhaust the demand for them when sold by that method. And that appellee's cattle were above the average of those that were sold at auction on that day at $183 per head, and that his cattle, considering their superior quality, would have brought $200 per head at the auction sale. But, when sold on the market at private sale, he could only obtain $100 per head for

them. The facts bring the case well within the rule announced by the Supreme Court of Massachusetts and approved by this court in *Chicago, R. I. & P. Ry. Co.* v. *Planters' Gin & Oil Company,* 88 Ark. 87, 88, as follows:

"The damages for which a carrier is liable upon failure to perform his contract are those which result from the natural and ordinary consequences contemplated at the time of making the contract of transportation; and a larger liability can be imposed upon him only when it is in the contemplation of the parties that the carrier is to respond, in case of breach, for special and exceptional damages."

The court gave the jury a correct guide in ascertaining the measure of damages, and the evidence warranted a larger sum than the jury found.

3. In the case of *St. Louis S. W. Ry. Co.* v. *Grayson, supra,* we held that under the Hepburn act the initial carrier is liable for damages to an interstate shipment of freight undertaken by it, whether the loss occurred on its own line, or on the lines of connecting carriers. See also recent case of the *Kansas City Southern Ry. Co.* v. *Carl,* 91 Ark. 97, where we held that the Hepburn act "renders invalid all stipulations limiting liability for losses caused by the carrier's negligence."

These decisions rule the case at bar on the question of limited liability under the written contract, conceding that the cattle were shipped under such contract, and, in view of the above decisions, the instructions of the court on this issue were more favorable to appellant than it was entitled to, and therefore it cannot complain.

4. The court in effect told the jury that, even if the cattle would have reached Brady in time for the auction sale but for the act of God, still if they were negligently delayed before reaching the obstruction, and but for such negligent delay would have passed beyond the point of obstruction before the obstruction occurred, the appellant would be liable.

In the cases of *Martin* v. *Railway Company,* 55 Ark. 510, and *James* v. *James,* 58 Ark. 157, there was a destruction of cotton by fire, an unavoidable accident, or, we may say, an act of God, and in those cases we said the failure to ship in the one case, and the failure to gin in the other, were of a series of

events without which the loss would not have happened, but they were not the direct and proximate cause of the loss. But such is not the case here. The direct cause of the loss of the market of April 18, 1908, to appellee was the delay, as the evidence tended to show, of appellant. For, but for such delay, the cattle would have reached Brady in time for the sale. True, it may be said that they, having passed the river before the flood came, also would have reached Brady but for the act of God in washing away the bridge. The cattle were not destroyed by the flood, as in the case of the cotton, *supra.* In cases where there is a destruction of property by fire or flood, it is literally true that these agencies are the direct cause of the loss. Here the loss to the market was due to the delay of the cattle in reaching their destination in time. The two things that contributed to that delay were the negligence of the company and the act of God. Both combined in the case to produce the delay in getting the cattle to their destination in time. Both were the direct and proximate cause of the delay which resulted in the loss. The one was not the proximate and the other the remote cause of the loss. But the one concurred with the other in producing the delay in getting the cattle to the market, and this delay, continued until and after the day of sale, was the direct and proximate cause of appellee's loss and injury. The rule applicable here is announced in 1 Am. & Eng. Enc. of Law, 595, 596, as follows: "Where the loss is caused by the act of God, if the negligence of the carrier mingles with it as an active and co-operative cause, the carrier is still responsible." See cases cited in note. See also Elliott on Railroads, § 1488. This is a typical case of concurring or commingling direct and proximate causes. See Hutchinson on Carriers (3d Ed.) § 297 (193), *et seq.*, where the varying views are stated and the authorities to sustain them are cited. See by analogy *Marcum* v. *Three States Lumber Co.*, 88 Ark. 28-37; *Chicago Mill & Lumber Co.* v. *Cooper*, 90 Ark. 326. In *Rogers* v. *Missouri Pac. Ry. Co.*, 88 Pac. Rep. 885, a carrier delayed the transportation of corn an unreasonable length of time, and after the corn reached its destination it was destroyed by an unprecedented flood. The Supreme Court of Kansas, in an exhaustive and able review of the authorities by Mr. Justice Burch, held that the carrier was not

liable, that the intervening act of God was the direct and proximate cause of the loss. That case and the many cases cited by him to support the doctrine announced are exactly in line with our own decisions of *Martin* v. *Railway Company* and *James* v. *James, supra,* where there was a total destruction of or injury to the property by the act of God operating upon it, and where the negligent delay was a mere incident, but not the direct cause, of the loss. These cases are correct, for in such cases it cannot be reasonably anticipated, when the contract is entered upon, that a negligent delay would bring the property within the operation of an act of God that would damage or destroy it. Such occurrence could not be reasonably foreseen and guarded against, and therefore there is no liability in such cases, because the loss is produced by the intervening act of God as the direct and proximate cause. But in cases like this, where the party contracts to deliver property at a certain time, the delay on his part that actually causes the result that the parties had expressly contracted should not take place, as in the case at bar the loss of the market, is certainly a direct and proximate cause of that result, and not a mere incident or remote cause of it. And it matters not that there may be also other concurring or commingling causes that also contributed directly to produce the delay. For it must not be forgotten that the loss of this market was caused by the delay, and not by the act of God. In all such cases as the Martin, James and Rogers cases, *supra,* the loss is caused directly by the act of God, and not by the delay.

Judgment is affirmed.

BATTLE, J., (dissenting). The following statements of facts is made by the court: "There was evidence tending to show that the cattle did not reach Brady on the day specified because of the negligent delay in shipment by appellant and connecting carriers; that but for such delay the cattle would have passed the place en route and have been delivered before the *unprecedented floods* came that washed away a bridge which thereafter rendered it impossible to deliver the cattle at the place of destination in time for the auction sale. The testimony on behalf of appellant tended to show that the cattle would have reached their destination on the Saturday morning of the day that the auction sale took place but for the fact

that a certain bridge was washed away by *unprecedented floods,*
which delayed their transportation for several days."

It is stated in the opinion of the court: "The court in
effect told the jury that, even if the cattle would have reached
Brady in time for the auction sale but for the act of God,
still if they were negligently delayed before reaching the ob-
struction and but for such negligent delay would have passed
beyond the point of obstruction before the obstruction occurred,
the appellant would be liable." This court sustained this in-
struction.

I think that the "unprecedented floods" were the proxi-
mate cause of the loss sustained by appellee, and that the ap-
pellant was not liable for losses on account of delay, which
was not the proximate cause.

Wharton says: "Negligence is the juridical cause of an
injury when it consists of such an act or omission on the part
of a responsible human being, as in ordinary, natural sequence
immediately results in such injury. Such, in fact, we may regard
as the meaning of the term 'proximate cause,' adopted by Lord
Bacon in his Maxims. The rule, as he gives it in Latin, is *'In
jure non remota causa sed proxima spectatur,'* which he para-
phrases as follows: 'It were infinite for the law to consider
the causes of causes, and their impulsions one of another. There-
fore it contenteth itself with the immediate cause, and judgeth
of acts by that, without looking for any further degree.'"
Wharton on Negligence (2 ed.), § 73.

Chief Justice COCKRILL, speaking for this court, in *Rail-
way Company* v. *Neel,* 56 Ark. 279, 287, said: "In actions of
this description the injury complained of must be shown to be
the direct consequence of the defendant's negligence. This is
the only practical rule which can be adopted by courts in the
administration of justice. It is not enough that the act charged
may constitute one of a series of antecedent events without
which, as the result proves, the damage would not have hap-
pened. *Hoadley* v. *Transportation Co.,* 115 Mass. 304. The
rule is illustrated by a variety of cases, and is sustained by an
unquestioned line of authority. *Little Rock Railway Co.* v.
*Talbot,* 47 Ark. 97; *Martin* v. *Railway,* 55 *Ib.* 510; *St. Louis,
etc. Railway* v. *Commercial Insurance Co.,* 139 U. S. 223; *Du-
buque Wood Co.* v. *Dubuque,* 30 Iowa 176."

In *Atchison, T. & S. F. Rd. Co.* v. *Stanford,* 12 Kan. 377, Justice Valentine said: "In law, proximate and remote causes and effects do not have reference to time, nor distance, nor merely a succession of events, or to a succession of causes and effects. A wrongdoer is not merely responsible for the first result of his wrongful act, but he is also responsible for every succeeding injurious result which could have been foreseen, by the exercise of reasonable diligence, as the reasonable, natural, and probable consequence of his wrongful act. He is responsible for any number of injurious results consecutively produced by impulsion, one upon another, and constituting distinct and separate events, provided they all necessarily follow from the first wrongful cause. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, but, if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result is to be considered in law as the proximate result of the first wrongful cause. *But, whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequence would not have happened, then such injurious consequence must be deemed to be too remote to constitute the basis of a cause of action.*"

Wharton on Negligence says: "Even when the rule is that *casus* must be 'meritable' to be a defense, the tendency of authority is to treat as inevitable such disasters caused by storms and sudden extremes of temperature as could not have been averted except by an intensity of diligence beyond that which is usually exerted by a common carrier who brings to the duties in question experience and capacity adequate to their discharge." He gives many illustrations of this rule. Wharton on Negligence (3 ed.), § 558.

After giving many illustrations of what constitute concurring causes he says: "At the same time it has been ruled that when a loss is attributable to a peril from which the carrier is by law exempt, liability is not imposed on him by the fact that

the goods would not have been exposed to the peril but for his negligent delay." *Ib.* § 559.

In *Rodgers . v. Missouri Pacific Railway Co.* (Kan.), 88 Pacific Reporter, 885, the "plaintiff sued the railroad company for the value of a car load of corn. The right to recover was predicated upon the defendant's negligence. The corn was delivered to the company at Frankfort on May 22, 1903, for transportation and delivery to the plaintiff's agent at Kansas City. Mo. The loaded car stood on the track at Frankfort until May 28, when it was hauled to its destination only to be overtaken and destroyed by the unprecedented flood of May 30, 1903, before it was delivered by the defendant. The delay was protracted through the negligent omission of the company to move the car. The flood was an act of God." The court, after a review of authorities at great length, said: "The court is of the opinion that the negligent delay of a carrier in moving goods intrusted to it for transportation, not so unreasonable as to amount to a conversion, will not render it liable for the loss of such goods after they have been carried to their destination, if they are destroyed by an act of God before delivery." The authorities referred to in the opinion are here cited.

In *Morrison* v. *Davis & Co.*, 20 Pa. St. 171, goods being transported on a canal were injured by the wrecking of the boat, caused by an extraordinary flood. It was shown that a lame horse used by the defendant delayed the boat, which would otherwise have passed the place where the accident occurred in time to avoid the injury. The court held that the proximate cause of the disaster was the flood. *Railway Company* v. *Reeves,* 10 Wall. 190; *Denny* v. *New York Central R. Co.*, 13 Gray 481.

In *Martin* v. *Railway Company,* 55 Ark. 510, the defendant contracted with a compress company to transport all cotton brought by its owners to the warehouse of that company in Little Rock to its compress in Argenta, but neglected to do so until a large quantity of cotton accumulated at the warehouse and in an adjoining street and caught fire and destroyed plaintiff's cotton. He sought to recover of the defendant the value of his cotton so destroyed. This court said: "The mere failure of the defendant to perform its contract with the com-

press company was in no wise the juridical cause of the fire. There was no direct connection between the neglect of the defendant to furnish transportation according to the contract, and the fire. The failure to furnish cars was one of a series of antecedent events without which, as the result proves, the fire probably would not have happened, for if the cotton had been removed there might have been no fire. But it was not the direct and proximate cause, and did not make the defendant responsible for losses caused by the fire. *St. Louis, etc. R. Co.* v. *Commercial Ins. Co.,* 139 U. S. 223."

In *James* v. *James,* 58 Ark. 157, appellees delivered to the appellant cotton, which he agreed to gin on the following Monday. He failed to do so and on the following Thursday the cotton was destroyed by fire. This court held that the failure to gin the cotton within the time agreed was not the proximate cause of its destruction. Justice WOOD, delivering the opinion of the court, said: "True, we might say if the cotton had been ginned on Monday, and carried away on Tuesday, it would not have been burned on Thursday. To use language similar to that employed * * * in the case of *Martin* v. *Railway Co.,* 55 Ark. 521, the failure to gin on Monday, was one of a series of antecedent events without which the loss would not have occurred, but such failure was in no sense the proximate cause of the loss"

In *Martin* v. *Railway Company* and *James* v. *James,* cited above, there was no causal relation between the negligence charged and the loss sustained. The delay in the first two cases did not produce the fire, and the delay in the last case did not produce the flood. In the first two the delay was not the juridical cause of the fire, and in the last it was not the juridical cause of the flood. The fires and flood were not the consequences of the delay. They were unconnected with and independent of the delay. The delay was no more the concurring cause with the fire in causing loss in the two cases than it was with the flood in causing the loss in the case at bar. All that can be said in the two cases in this connection is, that if there had been no delay the fire would not have destroyed the cotton, and the flood would not have prevented the delivery of the cattle in time; and so it might be said that if Miles had shipped his cattle at an earlier day they would have been de-

livered in time, and he would, have incurred no loss. But this, we have seen, is not sufficient.

The total loss of the cotton and the loss sustained in the market value of the cattle do not determine the proximate cause. As the opinion of the court seems to say or imply in distinguishing the case at bar from the two cases in which cotton was destroyed by fire. The damages or the extent of them did not produce the proximate cause, but the proximate cause produced the damages.

For the reasons given I dissent from the opinion of the court.