## MARTIN *v*. RAILWAY COMPANY.

Decided February 27, 1892.

1. *Negligence—Fire—Remote cause.*

Where a railway company had contracted with a compress company to transport all cotton brought by its owners to the warehouse of that company, but neglected to do so until a large quantity of cotton accumulated at the warehouse and in the adjoining street and caught fire, whereby plaintiff's cotton, situated a short distance away, was destroyed, an instruction that if the jury find that defendant had contracted to remove the compress company's cotton, and that plaintiff's loss was caused by its failure to do so, they should find for plaintiff, was properly refused; since defendant's failure to comply with its contract to remove the cotton was not the juridical cause of the fire.

2. *Negligence—Independent contractor.*

A railroad company does not become liable for an injury to another's property caused by the negligence of a compress company, exercising an independent employment, in the handling of cotton, by reason merely of the fact that the railroad company had taken up the compress company's receipts for cotton received for compression and issued bills of lading therefor to the owners of the cotton, and had agreed to pay the compress company's charges for compression.

3. *Railway—Bill of lading—Estoppel.*

Under the act approved March 15, 1887, which prohibits carriers from issuing bills of lading except for goods actually received into their possession, and gives a right of action against the carrier to the party aggrieved, a railway company which has issued bills of lading to the owners of cotton in the hands of a compress company is not estopped as to third persons from denying that the cotton was in its possession or control.

APPEAL from *Pulaski* Circuit Court.

JOSEPH W. MARTIN, Judge.

### STATEMENT BY THE COURT.

This action was brought by C. F. Martin & Co. and thirteen insurance companies against the St. Louis, Iron Mountain & Southern Railway Company for the recovery of damages caused by a fire. They allege in their complaint "that, on November 14, 1887, the plaintiffs, C. F. Martin & Co., were the owners of 1600 bales of cotton valued at $80,000, and of a certain building valued at $4500, and fix-

tures to the value of $1500, and all of the value of $84,500, the cotton being stored between Elm street and the river and between Main street and Cumberland street, and the building being situated on lot 1, block 1, in the city of Little Rock.

" That, on the 14th day of November, 1887, the defendant was a common carrier of goods for hire, and operated a railroad at Little Rock, and had a large number of bales of cotton in its possession, which it negligently held and kept in and about the warehouse and sheds of the Union Compress Company, at the north end of Main street, in said city, in a most dangerous and hazardous place and manner, and close to the track of its said road, which cotton was on said day negligently destroyed by a fire which was caused by the defendant by reason of its carelessness and negligence in storing and keeping said cotton and operating its said road ; which fire the defendant, by the use of due care, could have prevented and stayed, but did not, and which fire, by the negligence of the defendant, was carelessly communicated to said property of the plaintiffs, and by it negligently burned and destroyed, without any fault of the plaintiffs, or any of them."

They further allege that this cotton was insured, prior to the fire, by the thirteen insurance companies who are plaintiffs, to the aggregate amount of $61,227.73 ; that these companies had paid the various amounts for which they were severally liable on account of the insurance of the cotton destroyed, and had become subrogated to the rights of Martin & Co. to recover damages on account of the fire, to that extent.

The defendant answered, and, among other things, denied that the fire on the 14th of November, 1887, was caused by or through any acts of neglect or carelessness on its part, or on the part of any of its agents, servants or employees ; that the cotton and building, or either of them, were burned or destroyed by reason of negligence or carelessness on its part ; or that it had in its possession or control any cot-

ton in or about the warehouse or sheds of the Union Compress Company at the north end of Main street, or on said street, in the city of Little Rock.

The evidence adduced by the plaintiffs at the trial tended to prove the following facts: On the 14th of November, 1887, and before that time, the Union Compress Company, mentioned in the complaint, had a warehouse and sheds at the foot of Main street, in the city of Little Rock. The warehouse and sheds were on both sides of Main street, lying close up to the track of the railroad. The compress company had laid a floor or platform over the end of Main street up to the railway track, and beneath this floor, a few feet higher than the railroad track, had another floor. In the upper floor over the end of Main street there was an opening, and from this opening a stairway led to the lower floor. On the 14th of November, 1887, cotton was stored in the warehouse and sheds from the east side and across Main street and many feet to the west. The upper platform over the end of Main street and the one beneath were both occupied by cotton. A narrow footway on the upper platform to the stairway was kept open, and bales of cotton were piled on each side. A narrow way from the stairway across the lower floor or platform was left open for persons to pass to the railway and river. Cotton was also piled on each side of this way and close up to the stairway. The cotton stored in the warehouse and sheds, including the platforms at the end of Main street, was about 3900 bales.

There were two railway tracks of the defendant north of the warehouse of the compress company, extending its entire length, being at the nearest point five feet from the warehouse and sheds and a few feet below the lower floor of the same. On this track many locomotives passed daily. On the 14th of November, 1887, one passed as late as 2:40 in the afternoon.

West of Main street and north of the railway track was a building known as the boat-house, which was used and occupied by the Athletic Association. At the north end of

Main street was the Arkansas river, at which point there was a landing for skiffs plying between Little Rock on the south and Argenta on the north side of the river. The footways were left open and the stairway was built by the compress company for a way for persons to pass and repass in going to and from the railway, the boat-house and skiff landing. It was used for this purpose by many persons, and while passing along this way some of them smoked cigars or cigarettes.

On the 14th of November, 1887, Martin & Co. owned a building and about 1600 bales of cotton. The building was situated and the cotton was stored a short distance from the warehouses, sheds and platforms of the Union Compress Company.

On the day mentioned it was very dry, and it had not rained for sometime previous. The bagging on many of the bales which were stored with the compress company, if not all, had been cut in places for the purpose of inspection, and loose cotton protruded therefrom. It was not kept wet and there was nothing spread over it to protect it. In the afternoon of the 14th of November, 1887, between 4 and 5 o'clock, it caught fire. The fire spread rapidly and soon consumed the warehouse, sheds and platforms of the compress company and the cotton stored in and on the same, and in a short time extended to and destroyed the cotton and building of Martin & Co.

To show that defendant was responsible for the losses caused by the fire the plaintiffs introduced evidence tending to prove the following facts:

First—The Union Compress Company was engaged in compressing cotton for shipment. Its place for receiving cotton in Little Rock was at its warehouse, platform and sheds at the foot of Main street, where the fire in question occurred. Its machinery for compressing was across the river at Argenta. It was necessary to transport the cotton from the Main street warehouse, sheds and platforms to the compress at Argenta. To do this it made a contract with

S C—33

the defendant, by which the defendant undertook to furnish cars to transport the cotton, and when loaded to haul the the same to the compress in Argenta, the compress company paying therefor at the rate of $2 a car load. The compress company repeatedly demanded cars for transportation under its contract. On account of the unusual demand for cars for the transportation of cotton, the defendant failed to furnish the cars necessary to move the cotton, and on account of this failure the cotton accumulated to the extent it did. The compress company could have handled and safely stored all cotton at Main street if transportation had been furnished as demanded. But the cotton could not have been handled in Argenta, if it had been hauled to the Argenta compress from the foot of Main street, because it (the compress) was " blocked with cotton."

Second—The cotton stored at the foot of Main street was received for compression. When the owner or shipper stored it, the compress company would give a receipt stating therein that it was received for compression. When the owners wished to ship it, they would take these receipts to a railroad company, and the company would take them, holding them against the compress company, and issue its bill of lading to the owner. The railroad company would thereupon notify the compress company of this fact, with directions to insure, compress and load the cotton upon its cars for shipment. This was the custom of the Memphis & Little Rock and the St. Louis, Iron Mountain & Southern Railway Companies. When the defendant issued a bill of lading, it had the right to have the cotton compressed where and by whom it liked, or ship it as it was if it liked. It executed bills of lading for cotton which was burned while stored with the compress company as early as the 20th of October, and as late as the 14th of November, 1887, the day of the fire. Bills of lading for 410 bales were executed in October, and for 1050 in November. For the larger portion of the cotton, the bills were executed between the 7th and 14th of November. The Little Rock & Memphis

Company had issued bills of lading for about 1200 bales of the cotton which was burned as before stated.

Before the defendant adduced any evidence, the plaintiffs offered to prove by Dorsey Allen that defendant's locomotives had set fire to cotton in the immediate vicinity in which the fire occurred on several occasions shortly before the 14th of November, 1887, and the defendant objecting, the court refused to allow them to do so, and they excepted.

Upon the evidence we have stated the plaintiffs asked and the court refused to instruct the jury as follows:

1. "If the jury find from the evidence that the defendant, on the 14th day of November, 1887, was a common carrier of freight for hire, and operated a line of railroad in Little Rock, on the river front, between the warehouses and sheds of the Union Compress Company and the river, and held a large and unusual number of bales of cotton which i. id been split open, leaving cotton exposed, which it kept in a negligent and careless manner, in and about said warehouses and sheds on Main street, in said city, and that said cotton was a highly inflammable material, and the place where it was kept was partly on a public street of Little Rock, where many citizens, with knowledge of the defendant, or its servants, agents or employees, were constantly passing and lighting and smoking cigars and cigarettes, and that said cotton was kept by the defendants within a few feet of its line of railroad, where its engines were frequently passing, and that it was when the season of the year was very dry; and if they find that the defendant had contracted to remove the cotton across the river in a reasonable time, and that said cotton was so kept at said place by the defendant for an unusual length of time, because of the defendant's inability to furnish transportation after its bills of lading were issued, and that said loss was caused by the negligence of the defendant * * * in keeping said cotton at said place under the circumstances, and such fire was communicated to the property of the plaintiff, and it was burned as a probable

and proximate result of said fire, then the jury should find
for the plaintiff."

2. "If you find from the evidence that the defendant rail-
road company by its agents gave bills of lading for the cot-
ton at the compress shed or building, you are instructed as a
matter of law that the cotton so covered by bills of lading
was under the control of the defendant company, and if you
find from the evidence that that the plaintiff's property was
destroyed through the negligence of the defendant com-
pany, its officers, agents or employees, in not properly car-
ing for, watching and protecting the cotton held by it under
bills of lading, and that the fire was the result of the negli-
gence of the defendant company, its officers, agents or em-
ployees, you will find for the plaintiff."

3. "If the jury find from the evidence that the defendant
took up the receipts of the Union Compress Company for
cotton left at their warehouse and sheds, on Main street, by
the owners for compression, and thereupon issued its bills
of lading for said cotton, by which the defendant agreed to
transport the same to its destination, and then directed said
compress company to insure said cotton for the benefit of
the defendant, and to compress the same and ship it out, for
which insurance, handling, compressing and shipping out,
the defendant had agreed to pay said compress company,
the jury will be warranted in finding that the compress com-
pany was the agent of the defendant while so holding such
cotton for such purposes after the bills of lading were issued,
and the defendant is responsible for any negligence of the
compress company which caused the fire, while the com-
press company was acting in its line of duty and employ-
ment, as such agents, respecting said cotton."

4. "If the jury find from the evidence that the defendant
knowingly issued its bills of lading for a large number of
bales of cotton when in the warehouses and sheds of the
Union Compress Company, it thereby adopted such ware-
houses and sheds as its own, and if, in fact, the sheds were
not its own, and not under its control, it is, by virtue of

chapter 60 of the Acts of 1887, estopped from denying that said cotton was on its own premises and under its control."

5. * * * "If you find from the evidence that the railroad company receipted for and gave bills of lading for cotton which was upon * * * ground contiguous thereto (its right of way) and upon which it was accustomed to accept cotton for transportation, and allowed the same to remain there for an undue period of time before removing the same, and that cotton is an inflammable substance, this is a circumstance from which the jury may infer negligence against the defendant."

Other instructions were asked for by the plaintiffs and refused by the court which were covered by instructions given. The court gave instructions, over the objection of the plaintiffs, to the converse of those copied above.

The jury returned a verdict in favor of the defendant, and in response to the question: " Do you find that the cotton in the warehouse of the compress company was set on fire by an engine or train of defendants ? " propounded to them, answered " No." Judgment was rendered accordingly, and plaintiffs appealed.

*U. M. & G. B. Rose, E. W. Kimball, S. R. Allen* for appellants.

1. It was error to exclude Dorsey Allen's testimony as to the occurrence of previous fires near the same spot, within a short time previous, caused by locomotives of defendant. 91 U. S., 471 and many cases cited ; 23 Pac. Rep., 823 ; 42 Ark., 554 ; 1 Whart., Ev., secs. 20, 43.

2. The court erred in refusing the seventh instruction for plaintiffs. 41 Fed. Rep , 643 ; 12 S. W. Rep., 785. Also in refusing the eighth. Acts 1887, sec. 5, p. 84. Also in refusing the ninth. Sheldon on Sub., sec. 230 ; 3 Dill., 1. Also in refusing the tenth. 41 Fed. Rep , p. 652. A railroad is bound to keep its track free from inflammable matter. 49 Ark., 542 ; 32 A. & E. R. Cas., 38.

3. The second and third instructions for defendant were

erroneous. Mechem, Agency, sec. 734; Broom, Leg. Max.,. 688. The company was liable for the acts of its agent, the compress company. The possession of the agent is possession of the principal. 17 Ark., 155; Whart., Neg., sec. 180; 16 Wall., 575. Plaintiffs have the same right against defendant that the compress company would have had. 16 Wall., 575; 9 Allen, 21; 4 Cush., 278; 109 Mass., 283; Wood, M. & S.,. sec. 306 and note; *ib.*, sec. 305; Story on Agency, sec. 452.

4. The court erred in the fifth and sixth paragraphs of its instruction given on its own motion. 11 Ill. App., 386; 9 Penn. St., 345.

*Dodge & Johnson* for appellee.

1. The receipt of the compress company established the relation of bailor and bailee; when the railway company took this receipt and issued a bill of lading, the compress company then became the bailee of the railway company. The two companies were separate and distinct, and neither was responsible for the other. The compress company was a warehouseman, and responsible for all acts of negligence in the guarding and caring for the cotton. If the fire originated from the exposed position of the cotton, caused by the acts of the compress company, that company is liable, and not the railroad company. The compress company was the owner and in the actual possession and control of the warehouses and sheds on the day of the fire, and it was its duty to take care of the property, and it alone is responsible. The contention is that the railway is responsible because it had cotton stored upon which it had issued bills of lading, and had negligently failed to haul it away; that having negligently failed to haul it away made it responsible, not alone to the owners who held bills of lading, but to other owners who had cotton in the compress sheds. Appellants seek to recover on two grounds. (1.) That defendant negligently set fire to the cotton by sparks from its engine. (2.) For negligently holding and keeping cotton in and about the compress company's warehouses and sheds.

and so close to the tracks of its roads. The principal issue relied upon was that the defendant set fire to the cotton by a spark from its engine, and consequently, having started the fire, it was liable for the injury that ensued. The railroad denied this, and contended that even had the fire been started as alleged the company was not liable. See 35 N. Y., 210; 32 Eng., C. L., 613; 2 Wm. Bl., 893; 4 Denio, 464; 19 Johns., 381; 23 N. Y., 441; 49 N. Y., 427; 56 *id.*, 206, 629; 62 Pa. St., 353. These cases illustrate the doctrine of *proxima causa* as explained in 3 Pars. Cont., 198; 8 Harris, 171; 7 Wall., 45; 30 Ohio St., 555; 54 Wis., 342; 94 U. S., 475; 39 Md., 116; 71 Ill., 572; 76 Mo., 288.

2. The act of 1887 was passed to correct the evil of fraudulent bills of lading, and makes a transportation company or warehouseman liable, whether they actually receive the goods or not, if they issue a bill of lading. It has no effect as to third parties. See sec. 6 of the act.

3. The proof does not show that the compress company was the agent of the railway company, but is to the contrary. The compress company was the bailee of defendant and others having cotton in store. The defendant had no control over it—it was a separate corporation—its business was distinct, and the railroad is in no way responsible for its acts. Whart. on Neg., sec. 324; Sh. & Redf. on Neg., sec. 10; 30 Iowa, 183; 2 Mich., 368; 2 *id.*, 519; 63 Ill., 16; 63 *id.*, 545.

4. The sixth instruction for defendant, in connection with the fourth and considered with that given on the court's own motion, states the law correctly as to defendant's liability by reason of its failure to hasten transportation. 115 Mass., 305; 13 Gray, 481; 20 Pa. St., 171; 10 Wall., 176.

5. The seventh instruction asked by plaintiff is argumentative, and sums up statements of facts in favor of plaintiffs, without making a counter-statement for the defendant. Such an instruction is objectionable. 80 Ill., 51; 43 Md., 70; 81 Ill., 478; 33 Mich., 143; 57 Mo., 138; 90

Ill., 612; *ib.*, 430    It is error for the court to assume that facts have been proved, or that a certain state of facts exist. 83 Ill., 150; 41 Iowa, 353; 21 Minn., 442; 36 Ark., 155. Or intimate to the jury the opinion of the court as to the weight of the evidence.    34 Ark., 702; 43 Ark., 295; 2 A. & E. R. Cases, 260–2.

6.    The testimony of Dorsey Allen as to fires prior to the fire complained of was inadmissible.    48 Ark., 468; Wharton on Ev., sec. 40; 1 Gr. Ev., sec. 52; *ib.*, sec. 448; 73 Mass., 96; 115 *id.*, 240; 6 Cush., 398; 1 Gray, 511; 4 Md., 253; 3 Phill. on Ev., 443–4; 8 G. & J., 311–13–14; 60 Mo., 232; 150 Mass., 386.

But, if erroneous, the error was harmless.    42 A & E. R. Cases, 598.

*U. M. & G. B. Rose, E. W. Kimball* and *S. R. Allen* for appellants in reply.

35 N. Y., 210, and 62 Penn. St., 353, relied on by appellee, have been overruled and repudiated long since.    99 N. Y., 165; 56 *id.*, 200; 76 Ind., 166; 40 Am. Rep., 234; 59 Ill., 349; 14 Am. Rep., 13; 39 Md., 141; Cooley on Torts, 76; 94 U. S., 474; Bish., Non-Cont. Law, sec. 451; Whart., Neg., sec. 152; 1 Thomps., Negl., 171; 26 Wis., 223; 16 Ark., 308.    In this case there was no intervening cause whatever, and in such cases the wrong-doer is invariably held liable.    1 Thomps., Negl., p. 169.    The storing of cotton in a public street is a nuisance *per se.*    41 Fed. Rep., 643; 50 Ark., 446, and the twelfth instruction asked by plaintiff should have been given.    The proof is clear that defendant made the sheds at the foot of Main street a receiving station for a very large amount of cotton—practically the. only shipping place for cotton in the city.

1. Negligence not the proximate cause of a fire when.    BATTLE, J.    The first request of plaintiffs for instructions, which was refused by the court, refers in ambiguous terms to the oral contract of the defendant with the Union Compress Company to furnish cars and to haul the same, when loaded with cotton, across the river to the compress in Ar-

genta.   The reason for this reference is not apparent, unless
it be for the purpose of impressing the minds of the jury, if
granted, with the belief that the defendant was responsible
for the losses caused by the fire because it failed to perform
its contract with the compress company.   If such be its
meaning, object or intent, should it have been granted?

The mere failure of the defendant to perform its contract
with the compress company was in no wise the juridical
cause of the fire.   There was no direct connection between
the neglect of the defendant to furnish transportation ac-
cording to its contract and the fire.   The failure to furnish
cars was one of a series of antecedent events without which,
as the result proves, the fire probably would not have hap-
pened, for if the cotton had been removed there might have
been no fire.   But it was not the direct and proximate cause,
and did not make the defendant responsible for losses caused
by the fire.   *St. Louis, etc., R. Co.* v. *Commercial Ins. Co.*,
139 U. S., 223.

There was no evidence that the defendant was in the ac-   2. Liability
for negligence
tual possession or control of the cotton stored in the ware-   of an independ-
ent contractor.
house and sheds and on the platforms of the Union Com-
press Company at the north end of Main street, but the
truth is, the compress company had such possession and con-
trol.   The theory upon which this action was prosecuted, as
shown by the complaint and the refused requests of plain-
tiffs for instructions, was that the defendant is conclusively
presumed to have been in possession of the cotton for which
it executed bills of lading, and that it had made the place
where the cotton was burned a receiving station for its rail-
road, and the compress company its agent to receive and
hold the cotton.   Is this theory correct?

All liability for an injury sustained is based upon the
theory that the party liable has committed a wrong or
neglected a duty.   Upon this theory a principal is held
liable for the acts or negligence of his agent, and the master
for those of his servant.   Their liability is based upon their
right to direct and control the actions of the agent or ser-

vant in the scope of his employment. As an incident to this right, the duty rests upon them to so direct and control such acts of the agent or servant that no injury may be done to third persons. For the damages occasioned by a failure to discharge this duty they are liable.

The relation between parties in which responsibility attaches to one for the acts or negligence of the other must be that of principal and agent or master and servant, in which the one is subject to the control of the other. When a party "using due care in the selection of the person, enters into a contract with a person exercising an independent employment, by virtue of which the latter undertakes to accomplish a given result, being at liberty to select and employ his own means and methods, and the principal retains no right or power to control or direct the manner in which the work shall be done," no relation of principal and agent or master and servant arises; and the former incurs no liability for the negligence of the latter, his agent or servants, in the performance of the contract. In such a case the latter only represents the will of his employer as to the result of his work, and as to such means and methods is not a servant. but a master, and for negligence therein is alone amenable. Mechem on Agency, sec. 747, and cases cited.

But this rule of immunity from liability is not without its qualifications. If the thing to be done is in itself unlawful, a nuisance *per se*, or probably cannot be done without necessarily doing damage, the person causing it to be done by another is as much liable for injuries suffered by third persons from the act done as he would be had he done the act in person. But if the converse be true, that is, the act is in itself lawful, is not a nuisance *per se*, and can probably be done without necessarily causing damage and is not a duty imposed by law on the employer, and the injury results from the negligence of the contractor or his servants in the performance of the service undertaken, the contractor is alone liable. *Railway* v. *Yonley*, 53 Ark., 503; *Ellis* v. *Sheffield Gas Consumers Co.*, 2 E. & B., 767; *Peachey* v. *Rowland*, 13

C. B., 182; *Hole* v. *S. & S. Railway Co.*, 6 H. & N., 488;.
*Steel* v. *S. E. Railway Co.*, 16 C. B., 550; *Rapson* v. *Cubitt*,
9 M. & W., 710; *Reedie* v. *London, etc., R. Co.*, 4 Exch., 244;.
*Knight* v. *Fox*, 5 Exch., 721; *Milligan* v. *Wedge*, 12 A. & E.,
737; *Overton* v. *Freeman*, 11 C. B., 867; *Pickard* v. *Smith*,
10 C. B. (N. S.), 470; *Chicago City* v. *Robbins*, 2 Black, 418;.
*Storrs* v. *City of Utica*, 17 N. Y., 104; *Scammon* v. *City of*
*Chicago*, 25 Ill., 424; *McGuire* v. *Grant*, 1 Dutcher, 356;.
*Hilliard* v. *Richardson*, 3 Gray, 349; *Painter* v. *Mayor, etc.*,
46 Penn. St., 213; *Allen* v. *Willard*, 57 *id.*, 374; *De Forrest*
v. *Wright*, 2 Mich., 368; *Pfau* v. *Williamson*, 63 Ill., 16;.
*Logansport* v. *Dick*, 70 Ind., 79; and authorities cited.

In this case the Union Compress Company exercised a
distinct and independent employment. It was engaged in·
the business of compressing cotton. It received cotton in--
discriminately from the owners for compression and gave·
them a receipt for it and stored it as it saw fit. At the time·
of the fire in question, it had stored for compression at the·
north end of Main street 3900 bales of cotton, of which the·
defendant and the Little Rock & Memphis Railway Com—
pany had executed bills of lading for 2660 bales, the defend-
ant for 1460 and the Little Rock & Memphis Railway Com-
pany for about 1200. It does not appear who held the
receipts of the compress company for the remaining 1240·
bales. None of it, it seems, was stored for compression in
the first instance by either of the railroad companies men-
tioned. Their bills of lading were severally executed by
them after the cotton had been stored and receipted for by
the compress company. The course of conduct pursued by
the defendant in respect to this cotton was: When the·
owner requested, it gave bills of lading in exchange for the·
receipts of the compress company, and immediately notified
the company of the fact, and directed it to compress and
put the cotton on the cars for shipment. The cotton was·
not actually delivered to the defendant for shipment until it
was compressed, neither was it understood that it should be.
There was no evidence tending to prove that the defendant

exercised any control over the cotton until it was loaded upon its cars, or over the place where it was kept. Until it was placed upon its cars it assumed no care or custody of it. All that it acquired was the right to ultimate possession, which passed to it by the original depositors transferring to it the receipts of the compress company. *California Ins. Co.* v. *Union Compress Co.*, 133 U. S., 387.

3. Railway not estopped by its bill of lading when.

But it is contended that because an act of the general assembly of this State, entitled "An act to regulate the duties of warehousemen, transportation companies and others," approved March 15, 1887, prohibits all warehousemen and carriers, under a penalty, from issuing receipts or bills of lading, except for goods actually received into their possession, the defendant was estopped to deny that it had the possession of the cotton for which its bills of lading had been issued. But we do not think so. The act was passed to protect *bona fide* holders of the receipts of warehousemen and bills of lading of carriers. Prior to the passage of this act, it had been held by the Supreme Court of the United States that the master of a vessel or the agent of a railroad company has no authority to sign a bill of lading for goods not actually put on board of the vessel, or actually delivered for transportation, and, if he does so, his act does not bind the owner of the ship, or the railroad company, as the case may be, even in favor of a *bona fide* purchaser of the goods. *Schooner Freeman* v. *Buckingham*, 18 How., 182; *The Lady Franklin*, 8 Wall., 325; *Pollard* v. *Vinton*, 105 U. S., 7; *St. Louis, etc., Railway Co.* v. *Knight*, 122 U. S., 79, 87. The same doctrine was held by other courts of last resort, while by a few it was repudiated. In this State the law in this respect was unsettled until the act of March 15th was enacted.

In order to protect the holders of bills of lading given by carriers for goods, this act, among other things, provides: "That no master, owner or agent of any boat or vessel of any description, forwarder or officer or agent of any railroad, transfer or transportation company, or other person

shall sign or give away any bill of lading, receipt or other voucher or document for any merchandise or property by which it shall appear that such merchandise or property has been shipped on board of any boat, vessel, railroad car or other vehicle, unless the same shall have been actually shipped and put on board, and shall be at the time actually on board or delivered to such boat, vessel, car or other vehicle, or to the owner or owners thereof, or his or their agent or agents, to be carried and conveyed as expressed in such bill of lading, receipt or other voucher or document."

It further provides that such bills of lading and receipts shall be negotiable by written indorsement thereon, and the delivery thereof so indorsed, and that any and all persons to whom the same may be transferred shall be deemed and held to be the owner of the property for which the same were given "so far as to give validity to any pledge, lien or transfer given, made or created thereby, as on the faith thereof," and that "no property so stored or deposited, as specified in such bills of lading or receipts, shall be delivered except on surrender and cancellation of such receipts and bills of lading;" and that every person aggrieved by any violation of the act may maintain an action against the person or corporation violating it, to recover all the damages he may sustain by reason of the violation.

The main object of the act is to fix the liability of warehousemen, common carriers, and other persons named in the act, to the holders of their receipts or bills of lading. To do this it prohibits them from issuing the same, except for property in their actual possession, and from selling or encumbering, shipping or transferring, or permitting to be shipped, transferred, or removed beyond their control, the property for which a receipt or bill of lading has been given, without the written assent of the person or persons holding such receipt or bill of lading. Their liability for a violation of the act is limited to the persons aggrieved, who are the persons interested in the property described in the receipt or bill of lading. It does not undertake to define the duties

and liabilities of the warehousemen, carriers, and other persons named therein, to third persons, and does not change their rights, relations, duties or liabilities to such persons, but leaves them as they were before its enactment. Hence there is nothing in the act, or policy of the act, to estop them from showing, in actions like this, that the property for which their receipts or bills of lading were given was not in their actual possession.

If the Union Compress Company exercised a distinct and independent employment, and the cotton was in its custody, control and possession, and the defendant had no right to control or direct it in the management and storage of the cotton in question, it was not responsible for its (compress company's) acts or negligence as principal or master. There was no evidence of such a right. Neither was it claimed or alleged, nor was there any evidence to show, that the storage of the cotton with the compress company was a nuisance *per se*, but, on the contrary, it was alleged by the plaintiffs in their complaint that it was "negligently destroyed by fire, which was caused by the defendant by reason of its carelessness and negligence *in storing and keeping said cotton,* and operating its said road ; which fire the defendant by the use of due care could have prevented and stayed;" clearly admitting that the fire resulted from the manner in which the cotton was stored and kept, and that it could have been prevented by due care. Moreover, there was no evidence that any of the cotton, for which the defendant executed bills of lading, was placed and kept in the street.

The instructions asked for by the plaintiffs were properly refused. *St. Louis, Iron Mountain & Southern Railway Co. v. Commercial Union Ins. Co.,* 139 U. S., 223.

The refusal of the court to admit the testimony of Dorsey Allen, if it was competent for any purpose, was not prejudicial to any one. There was no foundation for it in the evidence. The uncontradicted evidence adduced at the trial showed that no locomotive had passed the cotton at the foot of Main street later than 2:40 in the afternoon of the day on

which the fire occurred, and that, this being true, the fire could not have been caused by a locomotive.

Judgment affirmed.