PHILLIPS PETROLEUM COMPANY *v.* BERRY.

4-3229

Opinion delivered December 11, 1933.

*R. H. Hudson, Cecil Hunt* and *Basil Baker,* for appellant.

*J. C. Young, Jr.,* and *Gladish & Young,* for appellee.

BUTLER, J. Mrs. Lila Berry, the appellee, was the owner of a frame dwelling house with a garage and barn adjoining, located on lot No. 38 in Lake City. The appellant Phillips Petroleum Company occupied a part of lot No. 38, adjacent to Mrs. Berry's property as a "bulk sales station" for the storing and distribution of petroleum oil products. On that part of the lot owned by the appellant was a frame building, part of which was used for storing motor oil and other lubricants and a part was used for the purpose of driving trucks into it and loading them with gasoline and coal oil from tanks situated nearby. In an open space adjacent to the warehouse there were three tanks, two used for gasoline and one for kerosene. The two gasoline tanks stood nearest to the building and the kerosene tank some further distance away. On the 29th of October, 1932, there

was placed upon a railroad side track which ran near the building a tank car of kerosene which was unloaded by means of a pump with a line of pipe extending from the tank car to the kerosene tank. This tank car was unloaded, and when this was done there were about 8,000 gallons of kerosene in the kerosene tank. After this operation, another tank car containing gasoline was placed on the side track in the position for unloading, and, while appellant's agent was emptying it into one of the gasoline tanks a fire was discovered in that part of the warehouse used for the purpose of permitting trucks to enter and from there to be loaded.

Clyde Sanders was the appellant's agent engaged in unloading the tank cars, and when the fire was discovered he went to its point of origin but found that it had made such headway and increased to such an extent he was unable to enter. He returned immediately to the tank car and cut off the flow of gasoline therefrom, and attempted to close the valve which entered the gasoline tank, but was unable to completely close it before he was driven away by the flames which had by that time spread into that part of the building where the lubricants were stored and which began to burn fiercely. The flames from the burning warehouse extended to the tank car and enveloped the storage tanks, melting the connection and allowing the gasoline and kerosene to flow out and causing the fire to burn with increasing fierceness. One of the gasoline tanks was empty at that time, but the other contained about 6,000 gallons of gasoline. During the progress of the fire the tank containing the kerosene exploded so that its contents were thrown out into the fire which spread to, and destroyed, the buildings of Mrs. Berry.

Mrs. Berry brought this suit to recover damages, alleging that the fire was occasioned by the negligence of the appellant in the maintenance and operation of its plant, in that it permitted inflammable substances to remain on and around the premises, and permitted the interior of the warehouse to become saturated with oil and gasoline, and to remain in that condition; that appellant was negligent in failing to safeguard its prem-

ises; that the storage tanks were provided with valves so constructed as to release gas accumulated therein; and that these valves failed to function by reason of their defective condition which resulted in the explosion of the kerosene tank. It was further alleged that the doors of the warehouse were permitted to remain open and unguarded, and that on account of this a mentally defective boy gained entrance to the warehouse where conditions were such that a fire might easily be started, and it was appellee's belief that the fire originated from a lighted match handled by the said defective boy, or from some other act of his unknown. Appellee alleged that the fire resulted in the loss of her dwelling house and personal property in the sum of $4,116.30, for which she prayed damages.

An answer was filed, admitting the fire and the destruction of appellee's property, but denying that the same was occasioned by any negligence on the part of the appellant and denying specifically all the allegations of the complaint charging negligence.

There was a trial which resulted in a verdict in favor of the appellee in the sum of $1,250.

Numerous grounds of error are assigned on appeal, the principal one of which is that no negligence was proved and that the court erred in giving to the jury instruction No. 1, for the appellee, which is (quoting from appellant's brief): "To the effect that if the defendants had large storage tanks, which contained large quantities of gasoline and kerosene, and had a warehouse near to the storage tanks, and if they negligently permitted their premises to be in an inflammable condition and they negligently failed to fence the property or provide guard or safeguard for the same, or that they negligently permitted the safety valves on the kerosene tank to become defective and in an unsafe condition, and if the jury found that such negligence on the part of the defendant, if any, was the approximate cause of the injury to plaintiff's property, then the verdict should be for the plaintiff; otherwise for the defendants."

Complaint is also made of the court's refusal to grant a number of instructions requested by the ap-

pellant, which, for the sake of brevity, will be grouped and disposed of under one head. It is also the contention of the appellant that the court erred in permitting Mrs. Berry to testify to the destruction of her household goods, that element of damage not having been alleged in her complaint, and that evidence was erroneously admitted over appellant's objection to the effect that there was no fire department maintained in Lake City. It is also contended that, since the evidence shows that Mrs. Berry sold the premises occupied by the appellant with knowledge that it was to be used for storing petroleum products and for their distribution therefrom and that she assumed the risks incident to such operation, one of which was the danger from fire breaking out therein.

The evidence regarding the nature of the construction of the warehouse, the erection of the storage tanks, and how the business of the appellant was conducted, is practically undisputed. It was shown that at all times large quantities of highly inflammable substances were kept in storage, and that in the necessary conduct of the business small quantities of gasoline and other oils would fall upon the ground within the warehouse and were suffered to remain there; that the agent of appellant and his helpers took care of the plant and were engaged in conveying gasoline and other petroleum products to various retailers, leaving the property unprotected in their absence, but that when they did leave, the doors of the warehouse would be closed. It was shown that there was no fence erected, or other means taken, to keep intruders from the premises and that at the time of the fire in question the double doors on the east side of the building were open, and that the defective boy had been discovered there some time before the fire and had been driven away.

There is some evidence to the effect that at times children would play upon the premises, and that the premises were not kept free from trash and weeds. It was also proved that at the time of, and just preceding, the discovery of the fire the double doors on the west side were closed but those on the east were open and un-

guarded. When Mr. Sanders discovered the fire it was necessary for him to pass around the building to the east side in order to enter, and when he reached the east doors he saw the defective boy standing there, and he told Mr. Sanders that it was he who had started the fire. It is evident that when Sanders found that a fire had started he did everything possible to prevent its spread and to save the property, and whatever negligence there was had occurred before this time. It may be admitted, as claimed by the appellant, that it was engaged in a lawful business, although the proof shows, and we take judicial knowledge of the fact, that it was one attended by more than ordinary dangers. The plant was used for the storing of petroleum products, all of which are highly inflammable, and it is well known that gasoline and kerosene are not only inflammable, but explosive, and, while we have held in the case of *Waters-Pierce Oil Co. v. Knisel,* 79 Ark. 608, 96 S. W. 342, that those engaged in the business of the appellant are clothed only with the duty of exercising ordinary care in its conduct, such care must be measured by the nature of the substances handled and the danger, according to the common experience of men, which might ordinarily result, so that, where a substance is inherently dangerous, ordinary care would be a much higher degree of care than if it were in its nature innocuous. It was therefore a question for the jury to determine whether, considering the nature of the business in which appellant was engaged and the place at which it was located, the appellant was negligent in failing to fence the premises or to take some other precaution to prevent the entrance of those who by some careless act might cause a fire to be started. *Waters-Pierce Oil Co. v. Knisel, supra; Gibson Oil Co. v. Sherry,* 172 Ark. 947, 291 S. W. 66; *Wright v. Chicago, etc.,* 27 Ill. App. 200; *Judson v. Giant Power Co.,* 107 Cal. 547, 40 Pac. 1020, 29 L. R. A. 718, 48 Am. St. 146; *Beal v. Seattle,* 28 Wash. 593, 69 Pac. 12, 92 Am. St. 892, 61 L. R. A. 583; *Sedita v. Steinberg,* 105 Conn. 1, 134 Atl. 243, 49 A. L. R. 154; *Stone v. Texas Co.,* 180 N. C. 546, 105 S. E. 425, 12 A. L. R. 1304, 11 R. C. L. 660; *Quaker*

*Oats Co.* v. *Grice,* 195 Fed. 441; *Van Fleet* v. *N. Y. & C. & H. R. R. Co.,* 77 N. Y. Supp. 636.

It was argued that the evidence shows that the kerosene tank was in perfect condition, and that therefore its explosion could not have been caused by any negligence on the part of the appellant, and that the submission to the jury of the question as to whether the appellant was guilty of negligence in the setting up and maintenance of this tank was error. On this phase of the case the evidence before us tending to support appellant's contention is that of the agent, Sanders. He did not testify of any inspection he had made just prior to the fire or at any other time, but contented himself with the statement that the valves at the top of the kerosene tank were in good condition; that they were the same kind of equipment as used on all storage tanks and so constructed that they could not help but properly function. The valve about which he was testifying was located at the top of the storage tank, and was intended to work automatically so that when gas formed in the reservoir it would push the valve upward according to the degree of pressure and where the pressure was sufficient it would give as much as a space two inches in width. According to the witness this valve worked on the same principle as a safety valve on a steam boiler. The gasoline tank was equipped with the same kind of valve, and also the tank car, and neither of these exploded, although the gasoline tank contained a great quantity of gasoline as did the tank car on the railroad track, both of which were nearer the fire than the kerosene tank, and it was observed that on this car the vaporized gasoline burned for several hours at the safety valve. The appellant gave no explanation why the kerosene tank exploded and that containing gasoline did not. An explosion did occur, the real cause being unexplained, and inference is allowable that it was caused by lack of proper care. *Judson* v. *Giant Power Co., supra; Biddle* v. *Riley,* 118 Ark. 218, 176 S. W. 134, L. R. A. 1915F, 902.

On the question of the instructions refused, some were grounded on the contention that the negligence of

appellant in maintaining the plant, if any, was not the proximate cause of the destruction of appellee's residence, and that the act of the intruder, whoever it was, who set the fire was the efficient intervening cause of the resulting damage. These instructions were properly refused, for the act of the child in starting the fire was a contributing cause, and had a direct causal connection with the original negligence. Where several causes combine to produce an injury, one is not relieved from liability because he is responsible for only one of these causes. It is sufficient to fix liability on him if, without his negligent act, the injury would not have occurred. *Ark. L., etc., Co.* v. *Cook,* 157 Ark. 245, 247 S. W. 1071; *St. Louis, I. M. & S. R. Co.* v. *Steel,* 129 Ark. 520, 197 S. W. 228; *McDonald* v. *Snelling,* 92 Am. Dec. 768. We think the jury might well have found that the condition in which appellant kept and maintained its property was one from which a person of ordinary experience and intelligence might have foreseen that the result complained of might ensue, and that therefore such was the proximate cause of the destruction of appellee's property, and that there was no intervening efficient cause, but one which contributed only to the result. *Wis. & Ark. Lbr. Co.* v. *Scott,* 153 Ark. 65, 239 S. W. 391; *St. Louis-S. F. R. Co.* v. *Williams,* 98 Ark. 72, 135 S. W. 804; *Pittsburg Reduction Co.* v. *Horton,* 87 Ark. 576, 113 S. W. 647.

Other of the instructions requested and refused told the jury as a matter of law that it was not the duty of the appellant to anticipate the presence of trespassers on its premises, and that there was no negligence in permitting the doors to remain open while the plant was in operation or while the manager or other employees were present or in failing to keep a guard to protect the property, and that as a matter of law children might not reasonably be expected to trespass on the property. These instructions were properly refused because all of them presented questions for the jury to be determined from the evidence in the case.

Instruction No. 5, requested by the appellant, presented no issue in the case and was properly refused. It

dealt with the question of the location of the plant, and by it the jury were told that it could not find against the defendant because the sales plant was located in Lake City. The question for the determination of the jury was not where the plant was located as fixing liability of the appellant, and certainly had no place among the instructions given.

Appellant complains of the modification by the court of instruction No. 4 requested by it. The instruction as requested is as follows: "Even if you believe that there may have been some unknown or undiscovered fault or defect causing the explosion of the tank, not discoverable in the exercise of ordinary care, then there could be no recovery by the plaintiff by reason thereof." The court modified this instruction by adding the words, "and the burden is on the defendants to show by a preponderance of the evidence that they exercised ordinary care to discover such fault or defect, if you find there was such fault or defect." The court had previously given an instruction placing upon the appellee the burden in the whole case to show by preponderance of the evidence that the defendants were negligent in some of the particulars mentioned in the complaint, and that such negligence, if any, was the proximate cause of the injury complained of, and, unless such burden was met by the plaintiff, the verdict of the jury should be for the defendant. What we have said regarding instruction No. 1, and the inference arising from the fact of the explosion, disposes of appellants' contention as to the modification made by the court, and since the jury were instructed that the burden on the whole case rested upon the appellee, there was no error in the modification.

On the question as to the admission of Mrs. Berry's testimony regarding the value of her personal property destroyed, we are of the opinion that the appellant is in error in assuming that there was no allegation upon which to ground this evidence. In paragraph No. 12 of the complaint, there is the following allegation: "That, as a result of the loss of the dwelling house, furniture, personal property, etc., * * *; that the plaintiff was the

440

owner of certain household goods and personal property of the total value of $562, etc.''

The testimony also as to the fact that there was no fire-fighting department in Lake City was admissible, as a circumstance tending to show whether or not appellant was negligent in the way it maintained and operated its plant.

It is true, as contended by the appellant, that the evidence establishes the fact that appellee sold the parcel of ground on which the appellant's plant is located to its predecessors in title about twelve years before the destruction of her property, and that she knew that it was to be used in connection with the operation of a business for the dispensing of petroleum products, but it does not appear that she knew the extent of these operations or the manner in which they were to be conducted. Even if the appellee knew all this at the time she first sold the property, it by no means follows that the maxim *"volenti non fit injuria"* applies. It must be conclusively presumed that in making the sale to the predecessors in title of appellant, Mrs. Berry had the right to assume that proper care would be exercised in the conduct of the business, and she undoubtedly had a right to demand that such care be exercised.

We are of the opinion on the whole case that there was some substantial evidence to warrant the verdict of the jury, and, as no error appears in the conduct of the trial, the judgment of the trial court is correct, and it is therefore affirmed.