LANGSTON *v.* MOSELEY.

5-301                                    265 S. W. 2d 697

Opinion delivered March 8, 1954.

*Bruce Ivy* and *Harrison & Harrison,* for appellant.

*A. F. Barham* and *Henry J. Swift,* for appellee.

GRIFFIN SMITH, Chief Justice. Roy Langston, Paul Burns, and Belford Scott were sued to compensate personal injuries sustained by Henry Moseley. The court directed a verdict against Burns and Scott and the jury assessed damages at $3,000. From this phase of the controversy there is no appeal. Langston's negligence was submitted to the fact-finders and a verdict in Moseley's favor for $3,000 was returned. From a judgment on the verdict comes this appeal.

Langston was driving across a street intersection in Osceola and had passed the line used by pedestrians when he realized that the red signal light was against him. In an effort to mend the situation he backed five or six feet and in doing so drove against and under the front bumper of Burns' car, locking them. Burns endeavored to disengage the cars. According to Langston, Burns was

"raising up and down on the bumpers" when he (Langston) got out of his car. He started to the rear, but testified that he did not go all the way back. On the contrary, he acted on Burns' suggestion to back his car slightly to relieve the tension. Langston says that it was while he was undertaking to do this that Scott negligently ran into his car.

Henry Moseley's version of the transaction resulting in his injury is that he was standing not far from the interlocked cars when Burns undertook to disengage them. Langston was standing on the traffic side of the automobile, while Burns was on the right, behind the Langston car. Burns called him to assist in separating the bumpers. Moseley walked in front of Langston's car and Langston, as he followed, said, "You get up here"—indicating the bumpers. Burns was on the opposite side when Moseley was told where to go. Moseley was quite certain that Langston told him there wasn't any danger. While Moseley, assisted by Burns, was on the bumpers shaking them, Scott hit the Langston car, the impact knocking Moseley to the paving. Dr. C. W. Silverblatt testified that the injury was considered serious, involving an ankle joint. Treatment required the application of a plaster cast, which was kept in place for about eight weeks.

Langston was positive that he did not tell Moseley to get on the bumper, and that he gave no assurance of safety, but this was contradicted and presented a factual issue for the jury's determination.

There was testimony that Moseley, when he responded to the request for assistance, was on the street or traffic side of the two cars, while Burns was on the opposite side. Burns admitted calling to Moseley, but did not know whether Langston had asked for help. Traffic created considerable noise and it was possible for Langston to have called without attracting the attention of this witness. In several respects Burns contradicted statements made by Langston.

We think the court's instructions—complained of by appellant—were proper in the circumstances. Langston

was not entitled to a directed verdict. The jury was told that if it found that Burns and Langston, in their endeavor to disengage the bumpers, were engaged in a joint enterprise, and that if in furtherance of this purpose either of them asked for Moseley's assistance, then, if these contentions should be established, and if Moseley were placed in danger, and the defendants Burns and Langston did not use ordinary care to warn him of peril a reasonably prudent person would have apprehended, Langston would be liable. Appellant thinks the instructions were inconsistent and confusing, but we do not find them open to this objection. Neither may error be predicated upon the court's action in explaining to the jury why separate verdicts should be given.

It was for the jury to say whether Langston, whose act in backing his car into Burns' bumper and impeding traffic, cast upon this defendant the duty of keeping a lookout. It is conceded that this was not done. The fact that Scott violated a traffic regulation by imprudently driving on the wrong side of the street to avoid injury to himself or to others when suddenly confronted with a speeding car was, of course, a circumstance to be considered in ascertaining whether there was want of prudence in placing appellee in a precarious position without reckoning traffic dangers.

It has long been the rule that where the negligence of two or more persons concurs to produce harm, either is liable to the injured person. *Missouri Pacific Railroad Company* v. *Riley,* 185 Ark. 699, 49 S. W. 2d 397. We think there was substantial evidence that Burns and Langston were engaged in a joint adventure or joint enterprise, and that the jury had a right to consider the interest of each and the attending requirement of care.

A person responsible for only one of several causes combining to produce injury is liable if, without his negligent act, injury would not have attended. *Phillips Petroleum Company* v. *Berry,* 188 Ark. 431, 65 S. W. 2d 533.

Affirmed.

Mr. Justice GEORGE ROSE SMITH, Mr. Justice PAUL WARD, and Mr. Justice SAM ROBINSON dissent; Mr. Justice McFADDIN concurs.

WARD, J. I cannot agree with the majority opinion because it ignores pertinent facts and recognized principles of law. Essentially the fact situation is this: Appellant asked appellee to help disengage the rear bumper of his car which was then sitting on the proper side of the street. While appellee was so engaged Scott drove his car [not from the rear of appellant's car where danger might have been expected] from across the street and into appellant's car, injuring appellee. This presents a typical situation calling for a discussion of "proximate cause" and "efficient intervening cause," neither of which were discussed in the majority opinion. The majority opinion erroneously assumes that the negligence of appellant and Scott were both concurrent and efficient.

With no exceptions to the contrary, the reports of this state and other states are replete with enunciations of the law of negligence which preclude a recovery here. In the early case of *Martin* v. *Railway Company*, 55 Ark. 510, 19 S. W. 314, the rule was announced that negligence is not actionable unless it is the procuring cause. In that case appellee, contrary to its contract with appellant, had failed to remove cotton from its warehouse and the cotton was later destroyed by fire. The court held there was no liability using this language:

"The mere failure of the defendant to perform its contract with the compress company was in no wise the juridical cause of the fire. There was no direct connection between the neglect of the defendant to furnish transportation according to its contract and the fire. The failure to furnish cars was one of a series of antecedent events without which, as the result proves, the fire probably would not have happened, for if the cotton had been removed there might have been no fire. But it was not the direct and proximate cause, and did not make the defendant responsible for losses caused by the fire."

In the case of *Gage* v. *Harvey*, 66 Ark. 68, 48 S. W. 898, 43 A. L. R. 143, in an action based on negligence

where there was an intervening cause the court at page 71 of the Arkansas Reports said:

" 'Supposing that, if it had not been for the intervention of a responsible third party, the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative; for the general reason that causal connection between negligence and damages is broken by the interposition of independent responsible human action.' "

In *James* v. *James,* 58 Ark. 157, 23 S. W. 1099, the facts were: A ginner agreed to gin cotton left at a gin by a certain time and failed to do so and the cotton was subsequently destroyed by fire while at his gin. The jury was instructed to find for the plaintiff if it should find that the defendant had contracted to gin the cotton by a certain time and that he negligently failed to do so. The cause was reversed because of the above instruction. The court stated: "The failure to gin on Monday was one of a series of antecedent events without which the loss would not have occurred but such failure was in no sense the proximate cause of the loss."

In *Pittsburg Reduction Company* v. *Horton,* 87 Ark. 576, 113 S. W. 647, 18 L. R. A. N. S. 905, the court stated the rule applicable in the case under consideration in these words: "It is a well settled general rule that if, subsequent to the original negligent act a new cause is intervened of itself sufficient to stand as the cause of the injury the original negligence is too remote."

In *Wisconsin & Arkansas Lumber Company* v. *Scott,* 153 Ark. 65, 239 S. W. 391, where plaintiff sought to have the jury instructed on negligence of the defendant in leaving a set-screw exposed and also in allowing rubbish to accumulate, this court in reversing the lower court said:

"If the alleged defect in this respect was not the true and proximate cause of the injury, it necessarily follows that the court erred in submitting it to the jury

as a question of negligence on account of which the plaintiff might recover."

The same uniform rule on "proximate cause" can be found in any number of our decisions, among some of which are: *Meeks* v. *Graysonia, Nashville & Ashdown Railroad Company,* 168 Ark. 966, 272 S. W. 360; *Alaska Lumber Company* v. *Spurlin,* 183 Ark. 576, 37 S. W. 2d 82; *Booth & Flynn* v. *Price,* 183 Ark. 975, 39 S. W. 2d 717; *Arkansas Power & Light Company* v. *Marsh,* 195 Ark. 1135, 115 S. W. 2d 825; and, *Central Flying Service* v. *Crigger,* 215 Ark. 400, 221 S. W. 2d 45.

In the *Marsh* case, *supra,* the court quoted with approval from Corpus Juris the following:

" 'Intervening cause as proximate cause. But an intervening cause will be regarded as the proximate cause, and the first cause as too remote where the chain of the result cannot be said to be the natural and probable consequence of the primary cause, or one which ought to have been anticipated. The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened.' "

Our decisions have also laid down a uniform rule by which we may judge what is a proximate cause or an effectual cause. In short the rule is that a person of reasonable intelligence must be able to foresee that damage might result. In the case under consideration regardless of whether or not Langston was negligent in "backing up" it cannot be said that he should have foreseen the possibility of Scott's car running into his car. In *Arkansas Valley Trust Company* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, 31 L. R. A. N. S. 1020, at page 165 of the Arkansas Reports appears a quotation of Judge BATTLE from a former decision as follows:

" 'In determining whether an act of a defendant is the proximate cause of an injury the rule is that the injury must be the natural and probable consequence of the act—such a consequence, under the surrounding circum-

stances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act.' ''

In the case of *LaGrand* v. *Arkansas Oak Flooring Company,* 155 Ark. 585, 245 S. W. 38, where this same question was discussed the court said: ''. . . still the appellee would not be liable unless, in the exercise of ordinary care under the circumstances, it could have been anticipated or foreseen that the injury might have occurred to the appellant while working at the place where he received the injury.''

In the *Meeks* case, *supra,* in this connection, it was said: ''It has been uniformly held that, in order to warrant a finding that negligence is the *proximate cause* of the injury, it must appear that the injury was a natural and probable consequence of the negligence and that it ought to have been foreseen in the light of attending circumstances.''

In the *Central Flying Service* case, *supra,* it was said: ''Proximate cause has been defined as a cause from which a person of ordinary experience and sagacity could foresee that the result might probably ensue.'' The general rule is announced in *Missouri Pacific Railroad Company, Thompson, Trustee,* v. *Davis,* 208 Ark. 86, 186 S. W. 2d 20, at page 98 of the Arkansas Reports.

From the above it is also obvious that appellee was not injured because of having been placed in an unsafe position or place to work. The law on this point is also well settled in the *LaGrand* case, *supra,* at page 592 of the Arkansas Reports. The court in commenting on an instruction of the lower court which stated that the defendant would not be liable ''unless, in the exercise of ordinary care under the circumstances it could have anticipated or foreseen that the injury might have occurred.'' In approving the instruction the court said: ''The master is only required to exercise ordinary care to furnish his employee a safe place in which, and safe tools with which, to do his work, and if the master, in the performance of this duty, has taken every precaution that a man of ordinary care and prudence would take under

the same circumstances, then he is not guilty of any negligence." In the case under consideration it cannot be said that Langston should have foreseen that Scott's car would run into his car, and, therefore, under this uniform rule he cannot be held liable.

In the case of *Missouri Pacific Railroad Company* v. *Horner,* 179 Ark. 321, 15 S. W. 2d 994, in discussing the rule relative to a safe place to work the court said: "There is no dispute about the appellee being injured. There are many injuries to persons and property for which the law furnishes no redress, and proof of injury alone, without proof of negligence causing the injury, does not entitle one to recover." Following the above the court quotes with approval: " 'The liability of the master for injuries to servant rests primarily on the broad principle of law that where there is fault there is liability, but where there is no fault there is no liability.' " At the last of the opinion the court commenting on an instruction said: ". . . as there was no complaint about the place to work, and especially because the appellee knew all about it and assumed the risk, this instruction, under the circumstances, should not have been given." In the case under consideration not only was there no complaint about the place but the only evidence, that of appellee, is the positive evidence that it was a safe place.

Although the principles governing the case under consideration have been, as shown above, often and uniformly announced it is necessary to turn to other jurisdictions to find cases where the facts are practically the same in effect as they are here. In all of these cases, as indicated below, it is clearly shown there is no liability in this case. In the case of *Venorick* v. *Revetta, et al.,* 152 Pa. Super. 455, 33 A. 2d 655, the following factual situation existed. Revetta's grocery truck was parked on a highway in violation of law while he was serving customers. Plaintiff who had just made a purchase was standing at the rear of defendant's truck with her back toward approaching traffic. Another truck approached from the rear and was attempting to pass when it met

another vehicle approaching in the opposite direction and seeing it would be impossible to pass he ran into the defendant's truck and injured the plaintiff. The court held that there was no liability quoting with approval these words:

" 'Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause.' "

The accident happened in open daylight and the court stated that the driver of the second truck became aware of the potential danger created by the parked truck within ample time to have avoided the accident. The court also used language which is highly significant in the case under consideration.

"This likewise disposes of the contention that Revetta failed to take reasonable precautions to warn customers in the vicinity of the truck of approaching traffic. Even if the duty existed, Pendleton's conscious conduct was a superseding cause."

The ruling in the above cited case was based on a similar Pennsylvania case, *Kline, et al.*, v. *Moyer, et al.*, 325 Pa. 357, 191 A. 43, 111 A. L. R. 406. In this case one Albert was forced to park his truck on the highway because of a broken axle. The highway where the truck was parked was straight and the view was unobstructed. While Albert was gone for repairs a car driven by the plaintiff from the opposite direction started to pass the truck when it met another car driven by Moyer which was going in the same direction the truck was headed and there was a headon collision. The question to be decided was stated by the court this way: Assuming that Albert was negligent in parking the truck "the important question presented on the appeal was whether such negligence was in whole or in part a proximate cause of the accident, or whether on the contrary it was legally insulated by in-

tervening negligence on the part of Moyer, reducing Albert's negligence to the status of a remote cause, and thereby absolving him from liability." In holding that the negligence of Albert was not actionable the court said:

" 'It is well settled that where there has been negligence in the doing of an act, the result of which is the creation of a dangerous condition, no liability will attach to the one responsible for the condition if an injury results which was not caused directly by this act, but rather by the intervening negligent conduct of a third party.' "

It was also said, in referring to Albert's negligence, that "the original negligence of the truck owner [Albert] became a non-causal factor divested of legal significance."

The Supreme Court of Minnesota in the case of *Goede* v. *Rondorf, et al.,* 231 Minn. 322, 43 N. W. 2d 770, reached the same conclusion by the same process of reasoning as in the two Pennsylvania cases mentioned above. The essential facts in this case were: When Goede attempted to turn to his right on Excelsior Avenue which was 40 feet wide and covered with ice the defendant, driving out of a filling station, onto the same street hooked his rear bumper onto the front bumper of Goede's car and dragged him approximately a half block down Excelsior Street. When Goede got out of his car and walked up to the locked bumpers a third car coming from an opposite direction hit Goede and killed him. His widow recovered $5,000.00 in an action against the defendant and the Supreme Court reversed the trial court holding that the defendant's negligence was not the proximate cause of the accident. The court stated the question this way: "The only question presented here is whether defendant's negligence, *which is conceded by defendant,* proximately caused or contributed to the death of plaintiff's decedent." (Emphasis ours.) Among other things the court had this to say: "If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all." Again the court said: "Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was

liable to result in injury to others then he is liable for any injury proximately resulting from it. . . . Consequences which flow in unbroken sequence without an intervening efficient cause, from the original negligent act are natural and proximate.'' Then the court in an effort to define an intervening cause such as would relieve from liability of the first act of negligence stated that it always depended on whether or not the original negligent party could have reasonably foreseen or anticipated the happening of the intervening cause. In this particular case the court said: ''We think that the negligence of the hit-run driver was such an intervening force.'' In speaking of the negligence of the defendant the court said: ''If it only became injurious through some distinct wrongful act or negligence of another, the last wrong is the proximate cause, and the injury will be imputed to it and not to that which is more remote.''

The majority, in an apparent effort to bolster an otherwise weak opinion, mention that appellant placed appellee in an unsafe place. Appellee's own view of this matter was:

''Q. You knew there was danger, two cars tied together, you knew that?

''A. No, sir. Not both cars standing.

''Q. What caused you to fall?

''A. By the car hitting the car caused me to fall off.

''Q. The thing that actually hurt you, Henry, was when this car came across the street?

''A. Yes.''

Thus this anomaly to the law of negligence: M. recovers from L. because of L's negligence in putting him in an unsafe place to work when M. says it was a safe place.

Justices ROBINSON and GEORGE ROSE SMTIH join in this dissent.